State of Minnesota ex rel. v. The Probate Court of Ramsey County et al.

STATE OF MINNESOTA, *ex rel.*, E. M. PRENDERGAST, *et al.*

*vs.*

THE PROBATE COURT OF RAMSEY COUNTY, *et al.*

*Pub. Stat. ch.* 39, § 2, (*Gen. St. ch.* 57, § 2,) provide, that in order to obtain a license to sell real estate, the executor or administrator shall present a petition to the probate court, setting forth, among other things, " the debts outstanding against deceased, as far as they can be ascertained." *Held*, not to require a statement in detail of such debts. A statement thereof in the aggregate is sufficient to confer jurisdiction.

After the confirmation of sale of real estate made in a proceeding of which the probate court had jurisdiction, that court, whether held by the same, or a subsequent judge, has no power to review such action, so had, and vacate and set aside the order of the license and subsequent proceedings dependent thereon. Its authority over the subject matter of the sale of the real estate, was exhausted by the exercise of it, when it had confirmed the sale.

At the relation of the purchaser at such sale, or those claiming under him, this court will prohibit the probate court from exceeding its jurisdiction in entertaining or taking any proceeding upon a petition of the heirs or devisees of the deceased, praying for an order vacating its former action, as aforesaid.

The relators are the purchasers and grantees of purchasers at the sale of certain real estate sold under order of sale of the probate court of Ramsey county, by the executor of John Spencer, deceased, and they seek in this proceeding to prevent the said court, by writ of prohibition, from setting aside the order of sale, and the proceedings thereunder, and confirmation of sale, and from entertaining an application for

that purpose. The facts appear fully in the opinion of the court.

Gilfillan & Williams, for Relators.

L. M. Brown, for Respondents.

*By the Court.*—Ripley, Ch. J.—This writ alleges that in Nov. 1859, John Spencer died seized of the real estate in question ; that by his will, duly proved and allowed in said probate court on Jan. 5th, 1860, John B. Spencer was appointed executor, and letters testamentary were issued· to him ; that on the 6th Jan., 1862, said executor duly presented and filed in said court, in due form of law, his petition for license to sell the real estate of said testator to pay the debts and charges of administering the estate ; that such due proceedings were had thereon, that on the 27th Feb. 1862, an order was duly made and entered licensing him to sell said real estate for said purpose ; that pursuant thereto, said executor duly sold the same ; that the sale was afterwards duly confirmed by said court ; that thereupon said executor duly executed to the purchasers his deeds thereof ; that afterwards, on the 12th May, 1862, the final account of said executor was duly examined and allowed ; that on the 14th Oct., 1871, Spier Spencer, and Rose Ann Spencer, petitioned said probate court, because of certain irregularities by them alleged to have intervened in said above mentioned proceedings, that the said probate court should make an order setting aside and vacating the afore mentioned petition, and said order of license, and all subsequent proceedings thereon based and dependent, and to appoint a time for the hearing of such application, and to cause notice thereof to be given to the parties interested in the real estate so sold ; that said petitioners intend to

appear before said court at the time appointed by it for the hearing of said application, and bring the same to a trial and determination before and by said court, and that said probate court and the judge thereof, received and filed said petition; issued an order of notice thereon, returnable Dec. 4, 1871, and a citation to the executor, said purchasers, and their grantees, requiring them then and there to appear and show cause why the said application should not be granted, and that said court and judge intend to proceed to the hearing and determination of the same, and to make such order in the premises as to the said court and judge might seem proper —all which, it is alleged, will be without the jurisdiction of the said court and judge.

It appears from the return to the writ, that said executor and Spier Spencer were the only heirs at law of John Spencer, and that Spier and Rose Ann are named as devisees in said will; that they are assignees of the executor and his wife Nancy, also named as devisees; that their said petition alleges that the second specific devise in said will was, void, whereby an interest in said real estate descended to said John B. and Spier, as such heirs at law.

The relators are purchasers and grantees of purchasers at said sale.

It further appears from the said return, that the said Spier Spencer, and Rose Ann Spencer, in and by their said petition alleged, that the said petition for license to sell did not state facts sufficient to confer jurisdiction upon said probate court to grant said license. A copy of so much only of said petition as related to the debts of John Spencer deceased, is annexed to said return, as follows, viz.: " To the Hon. Probate Court of the County of Ramsey : the petition of the undersigned, John B. Spencer, executor of the last will and testament of John Spencer deceased, respectfully represents, that the full amount of per-

sonal property which has come into his hands as executor was the sum, in value, of $237.15, of which there now remain undisposed of, the sum of $184.65; that there now remains outstanding against said estate debts, including incumbrances against the real estate of said deceased, the sum of $3,300, and upwards, as far as your petitioner can ascertain the same."

The respondents allege that the above statement was not sufficient to confer jurisdiction on the probate court. As no exception is taken to any other part of the petition, it is to be presumed, as the respondents did not see fit to annex a copy, that it was in all other respects in due form.

The statutes in force at the time provide, that in order to obtain a license, the executor " shall present a petition * * setting forth the amount of personal estate that has come to his hands, * * * and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, as far as the same can be ascertained." *Pub. St. ch.* 39, § 2.

The respondents contend that this requires an " account " of such debts: a statement in detail, as we understand them, and that the statement in the petition is therefore insufficient.

The New York decisions upon which they rely are not in point, since they arose upon a law which required the executor to present with his petition a just and true account of the personal estate and debts, as far as he could discover the same. *Atkins vs. Kinman,* 20 *Wend.* 241.

The respondents' construction of the statutes might lead to very serious results, the general practice, in this territory and state, having always been, so far as we are advised, not to make any detailed or specific statement of outstanding debts, but to state them in the aggregate, as in the present petition.

Such an aggregate statement, is one way of setting forth

the outstanding debts; a statement in detail is but another way of doing the same thing, so that the respondent's objection, in reality, is, not that the petition does not set forth the debts, but that the setting forth is not *such* a setting forth thereof as the law requires.

But if anything more than a statement in the aggregate were held to be requisite to confer jurisdiction, the next question would be, how much more specific must it be? The statute furnishes us no guide in respect of such an inquiry. If the judge should be of opinion that a statement in the aggregate was, under the circumstances of the case, not sufficiently specific, it would obviously be within his discretion to require an amended petition in that regard; but that such a statement would be sufficient to confer jurisdiction, we have upon the wording of the statute no doubt at all. Moreover, what is the object of the statement? By *sec.* 3, " If it shall appear by such petition, that there is not sufficient personal estate in the hands of the executor or administrator to pay the debts outstanding against the deceased, and the expenses of administration, and that it is necessary to sell * * the real estate for the payment of such debts," the judge shall issue an order of notice on the petition.

It must appear by the petition that the debts and expenses exceed the assets. That will appear as well by a statement of the aggregate of such debts, as by one in detail.

There was a reason, which does not obtain here, why the administrator in New York should present an account of the debts. There, upon the return of the order of notice, a hearing was to be had before the surrogate, as to the existence and validity of debts; the surrogate was to enter of record the demands which upon such hearing he should adjudge valid, and if the proceeds of such sale, paid over,

should be sufficient to pay the debts so established before him, the heirs and devisees, and remaining lands were to be exonerated from such debts ; and provision is made for other hearings before the surrogate in respect of the existence and validity of debts, prior to distribution. 2 *N. Y. R. S.* 101 *to* 107. *Dayton on Surrogates, pp.* 558 *et seq.*

Our statutes, on the other hand, provide for the appointment of commissioners to receive, examine, and adjust all claims against the deceased ; their report is made a record of the probate court, from which an appeal lies, not to the judge of probate, but to the district court. The object, therefore, of requiring a detailed statement of debts to the judge of probate, it not being within his province to decide upon their character or validity, would not have been very apparent. Besides, the report of the commissioners would be at hand to furnish the judge with official proof of the correctness, or otherwise, of the representations in the petition.

For these reasons, this petition must be taken to have stated facts sufficient to confer jurisdiction. This being so, we shall not consider whether or not, in respect of the right of the probate court to entertain such a petition as this of the respondents, there be any difference in principle between this case and one in which the petition appeared, on its face, to be manifestly insufficient

The question which we have to decide, is whether after the confirmation of a sale made in a proceeding of which the probate court had jurisdiction, that court, whether held by the same, or a subsequent judge, for in this respect there can be no difference in principle, can review its action so had, and vacate and set aside the order of license and subsequent proceedings dependent thereon.

This question, we apprehend, must be answered in the negative.

The case of *Pettis vs. Wilmarth*, 5 *Allen*, 144, is not only analagous in principle to the case at bar, but states, in a very few words, the principle, as we conceive, by which it is governed  The judge of probate in that case, decreed an allowance of three hundred dollars to the widow of the deceased, from which an appeal lay to the next term of the supreme court if claimed within thirty days.

Instead of appealing, upon application by one of the heirs, six months afterwards, that decree was revoked, and a new decree passed, allowing her fifty dollars. Upon appeal by the widow from such second decree, it was reversed by the supreme court as unauthorized and void.

The court hold that the appellant gained, by the passing of the first decree, a vested right to the allowance of three hundred dollars. And, say the court, " we know of no authority which he had to rescind the decree that he had already made. If he could rescind his first decree, he might rescind the second, and so on indefinitely, and there could be no certainty that any decree had finally established any party's rights, but every person in whose favor a decree had been obtained, would hold it precariously, at the discretion of the judge who passed it."

The force of these remarks applied to a purchaser who has paid his money and received his deed under an order of confirmation in a proceeding like the present, and who surely has a vested right in the title thereby acquired, be it good, bad or indifferent, is too obvious to require any other remark than that a case in which another judge than he who confirmed the sale, assumes, nearly ten years after, to review the decision of his predecessor, and revoke his order, would, if such an authority existed, present a still more striking instance of the precarious tenure by which a purchaser at an executor's sale would hold.

The supreme court of Massachusetts go on to say, that their statutes have made provision that a judge of probate may revoke his decrees in certain cases; that if an account is settled in the absence of an adverse party, and without notice to him, it may be opened upon his application, at any time within six months; that upon the settlement of any account, all the former accounts may be so far opened as to correct any mistake or error therein, except that matters in dispute previously heard and determined, should not again be brought in question without leave of court; that warrants of appraisement for examining claims on insolvent estates for partition, or assignment of dower, might be revoked for cause and new commissions issue, &c.

But the court proceeds to say, that "except in these cases, or others, if there are any, specially provided for by statute, a decree of a judge of probate is to stand, unless it is reversed or reformed on appeal to this court, or is adjudged to be void in some collateral proceeding."

"When a judge of probate, on hearing an application for a decree, refuses to pass it for want of sufficient evidence that it ought to be passed, such refusal does not prevent him from passing it upon a new application, supported by the requisite evidence of its necessity or expediency; but where authority to act is conferred by law, there is a manifest difference in the legal effect of an act done under that authority, and a single or repeated refusal to act under it. In the former case *the authority is exhausted by the exercise of it ;* in the latter it is retained for future exercise." The words we have italicised, are the answer to the application to revoke this license to sell.

The authority of the probate court over the subject matter of the sale of this real estate, was exhausted when it had confirmed the sale. Its power over the proceeds of such sale in the hands of the executor, would be an entirely different

matter, as would be the rights and remedies in said court of those interested in such proceeds.

If, as respondents allege, the account rendered by this executor of his disposition of the proceeds of this sale, has never been properly settled, his liability and the jurisdiction of the present judge in respect of such proceeds, depends upon other provisions of the statute, not involved in this inquiry.

But what the executor has done with the proceeds has obviously nothing to do with the power of the probate court to review its decree confirming the sale, and directing conveyances to be executed. *Pub. St., ch.* 39, *s.* 21.

So with respect to the allegation of the respondents, that said petition of said executor was fraudulent and void as against the heirs and devisees, in stating that there were debts to the amount of three thousand three hundred dollars, there being in fact less than five hundred dollars, whereby they were deprived of their right under section ten of said chapter, viz.: that no license shall be granted if those interested in the estate will give bond with approved sureties, to make up any deficiency of the personal property to pay debts, &c.—the court, in the respondent's view of it, being thus imposed upon, and induced to grant the license, when it otherwise would not. As it is not alleged that due notice of the hearing upon the executor's petition was not given, and the heirs and devisees must therefore be taken to have been cognizant of it, as, supposing them to have been under the false impression induced by such petition, that the debts were three thousand three hundred dollars, there is, nevertheless, no allegation of an ability, or willingness on their part to have given bond to make up any deficiency whatever, however small, as the allegation of the executor's petition that the personal estate remaining was but $184.65 is not disputed, while it appears, that after deducting the amount claimed by

respondents not to be a debt, (viz.: $2,921.60) from the three thousand three hundred dollars, there is still an excess of debts over assets of some two hundred dollars, it is very obvious how far this is from a showing, that the judge was by imposition induced to grant a license to the injury of the respondents. But, suppose he was, that did not affect his *power* to grant it. If the personal estate was insufficient, the executor might sell upon obtaining a license therefor, and proceeding as in the act directed. (*Sec.* 1.) In order to obtain a license he was to present such a petition as this. (*Sec.* 2.) If it appeared thereby that there was a deficiency, the judge was empowered to act, (*sec.* 3,) and if it appeared to him on the hearing that a sale was necessary, to grant the license. (*Sec.* 4.)

The present case presented all possible requisites to give the probate court jurisdiction to act in the premises. *Grignon vs. Astor's, Lessees,* 2 *Howard,* 319.

The statute indeed provided that no license should be granted, if those interested would give bond, &c. But if on the existing state of facts, the court had authority to grant a license, it certainly could make no difference, that if the facts had been different, *i. e.* if those interested had offered to give sufficient bond, &c., the court would either have refused to grant it, or have erred in granting it; and this without reference to whatever may have been the reason why such different state of facts did not exist; whether, for example, those interested were fraudulently prevented from giving security to pay the debts. The court, notwithstanding, has, it is evident, exercised a power conferred by law, and so exercising, would have exhausted it.

With respect to the objection that the license did not conform to the requirements of *sec* 13, the return contains no copy of it, or statement of its contents; nor does the respondents'

State of Minnesota ex rel. v. The Probate Court of Ramsey County et al.

brief allude to the objection ; it may be observed, however, that
in whatever particular the license did not so conform thereto,
to that extent it was an irregularity in the exercise of the
jurisdiction, as to which, whatever the power of the probate
court by way of amendment, or otherwise, while the proceed-
ing was yet pending, it can assuredly have no power now to
revoke such license by reason thereof, its power over the
whole subject matter being exhausted by its order confirming
the sale.    The same thing is true of the allegation that the
executor did not take the oath, and give the bond by law
required before the sale.    The order of confirmation recites
that he did.    But suppose that there was no such recital, and
that the executor did not.    It would be error in the court to
confirm this sale without evidence that he had complied with
the law, but it would be error in the exercise of a power con-
ferred by law, which might be corrected on appeal ; the power,
nevertheless, would have been exercised, and exhausted in the
exercise.

The respondents' position really is, that, the court ought not
to have confirmed the sale, because the executor had not
proceeded according to law in making it.    The court, however,
has once passed upon that question, and decided that it ought
to confirm the sale upon the proof then before it.    The respon-
dents now move it to try that question again, upon the proof
which they now present.    If it can, and does, and revokes the
order of confirmation, why cannot these purchasers apply to
the successor in office of the present judge, upon proof that
the law *was* complied with, and procure the order revoking
the sale to be itself revoked.    If this judge can re-examine the
decrees of his predecessor, there is no reason why his successor
should not re-examine his, and so on indefinitely.

The decree confirming the sale was either final, *i. e.*, the end
of that proceeding, or it was not.    If it were final, it " is to

stand unless it is reversed or reformed on appeal," " or is adjudged to be void, in some collateral proceeding."

We have already expressed our opinion that it was such a final decree, as is indeed sufficiently evident upon the face of the statute. As already observed the proceeds of the sale are thenceforward assets in the executors hands. The court has thenceforward power over those assets, which being a power dependent upon the fact that there are assets, necessarily depends upon its prior exercise of the power it possessed over the real estate, to convert it into those assets. The decree, therefore, which finally operates such conversion must be a final decree. The land as it were, has passed out of court, and its proceeds have taken its place.

The understanding of the legislature that this is so, is very manifest from the circumstance, that while an appeal was given from an order directing real property to be sold, or confirming the same, (*Pub. St. ch.* 58, § 43,) none was given from an order rescinding such confirmation, or revoking such license; and that while a limitation of five years is provided for the bringing of actions in which the sale may be collaterally attacked by plea and proof of the matters specified, the law is silent in respect to such proceedings as those which the respondents have instituted, (*ch.* 39, §§ 50, 51, 52,) so that, if the jurisdiction attempted to be exercised by the present incumbent exists, the law has not guarded against its exercise a century hence, by any future judge, which is incomprehensible, if the legislature supposed that there was any such jurisdiction.

The respondents rely on the case of *Sipperly vs. Baucus,* 24 *N. Y.* 46. There, the administrator petitioned for a final account, which was had, and after hearing the proofs, a final decree was entered by the surrogate in Sept., 1851, and thereafter an order of distribution. In 1855, the next of kin, upon

allegation of error in the accounting, petitioned that the decree be opened, and the administrator charged with an error of over fourteen hundred dollars. It was made conclusively to appear that the sum of $1,480, received by him, was accounted for as $14.80. The surrogate opened the decree and ordered a further account. The court of appeals held that he had power to do so.

The respondents consider this an authority for the proposition, that the jurisdiction of the probate court over the subject matter of proceedings before it, is not terminated by the entry of a final decree. It is very far, however, from being such.

The court of appeals consider that the power to open a final settlement of an executor's accounts, for such an object as that before them, was one of the powers incidental and necessary to the proper discharge of the duties of the court, putting it on the same footing as the power of the chancellor to correct a mistake in drawing up a decree, if seasonably applied for, and holding that there being no proof that this application was not made promptly on discovery of the error, there was no proof of laches, and it could not therefore be said that it was not made in time.

That the only statute bearing upon the question declared that the final settlement of an account and its allowance by the surrogate should be conclusive evidence as against parties duly served with notice of certain specified matters only, none of which included the error complained of. That therefore the decree in question was not *such a final adjudication* as to divest the surrogate of control over it.

And we are elsewhere told, that the account provided for by the statute, though termed a final account; and the settlement thereof, though also termed final, are not in any broad sense possessed of that character. Their finality is limited to

the particulars enumerated in the statute above referred to, in respect of the persons notified as aforesaid. The administrator in the accounting gets no adjudication, that no other assets are chargeable to him as having been received than those which are stated to have been received. *Dayton on Surrogates*, *p.* 503.

That is to say, by the statute of New York, the settlement was not final as to the very matter in respect of which a further account was sought in the case referred to. The account, as settled, states that the administrator had received $14.80. It was conclusively shown that he had received in addition thereto $1,455.20. The surrogate's court had made no adjudication that he was not chargeable therewith. It is, therefore, quite easily comprehensible that the court of appeals should hold that this was not *such a final adjudication* as to divest the surrogate of control over it.

The conclusion is, that the proceedings, and the proposed proceedings of the probate court, as set forth and admitted in the return herein, are without its jurisdiction; and it is unnecessary to add, to the predjudice of the relators. The office of this writ is to prevent courts from going beyond their jurisdiction. (*Home Ins. Co. vs. Flint*, 13 *Minn.* 244.) The facts make a case for its issuance.

Though not referred to by either party, we have not overlooked the fact that *sec.* 2 *of Session Laws of* 1864, *ch.* 45, entitled "an act to protect purchasers of real estate at executors, administrator's and guardian's sales," provides "That in all cases when a probate court shall hereafter make an order ratifying and confirming a sale of the real estate of any deceased person, * * made by any executor, * * * * no proceedings shall be had to set aside or vacate such sale after the expiration of two years from the date and entry of such order of confirmation of said sale, and if said order of

confirmation has been *heretofore made,* no proceeding shall be had to set aside and vacate said sale after the expiration of two years from the passage of this act; and the conveyances of the executor  *  *  made in pursuance of any such sale, shall not, after the expiration of said two years, be *voided by any court,* for any irregularity or omission in the proceedings before the sale, unless it shall appear that there was fraud in the acts of the judge of probate, executor,  *  *  *  either or all, whereby injury results to the estate of such deceased person." Nor have we failed to perceive that as, though repealed by the revision, it had already operated upon *this* sale, it might, if not open to any constitutional objection, (and we do not mean by this to imply that it is,) be availed of by the relators at the hearing in the probate court in bar of the proposed proceeding. Nor do we forget that it is discretionary with us to issue this writ, and that it is as a general rule refused if the relator has another sufficient remedy. *Ex parte Braudlacht,* 2 *Hill.* 367, and *State vs. Hundall,* 2 *Nott & McCord,* 419, 423, cited therein, and cases cited in note B. But assuming that a plea of the statute would be good, laying out of view, too, that the rule is, if the relators state a case for the writ, that it is for the respondents to show cause why it should not issue, we do not see that the right to plead the statute could be considered as a remedy perfectly adequate for the grievance complained of, to wit: the going beyond its jurisdiction by the probate court to the injury of the relators.

By the very inception of such proceedings they are disturbed in the quiet enjoyment to which they are entitled, so far as any such proceedings are concerned, of the title acquired by their purchase. So far from the power of pleading the statutes being an adequate remedy for this grievance, the necessity, lest worse should follow should they omit it, to appear and plead, would be in itself an additional grievance.

Should the probate court, moreover, overrule such plea, and proceed to vacate the order of confirmation, they have no right of appeal. They must resort to their certiorari. In the mean time their title is practically in litigation.

We are therefore, of opinion, that the relators are entitled to have the writ made absolute.

Ordered accordingly.