P. J. SMALLEY *vs.* OLE ISAACSON, impleaded, etc.

May 13, 1889.

**Action for Partition—Life-Tenant of Whole Property.**—The action for partition will not lie against, and the judgment and partition will not affect the estate of, one who is only tenant for life of the whole property of which partition is sought.

**Same—Partition of Reversion.**—It will lie for partition of the reversion, although the land be in possession, under an outstanding particular estate. Following *Cook* v. *Webb*, 19 Minn. 129, (167.)

**Same—Occupying-Claimants Law.**—The provisions of what is commonly called the "Occupying-Claimants Law" (Gen. St. 1878, c. 75, §§ 15-24) apply to the action for partition.

**Same—Improvements by Tenant for Life.**—A tenant for life, making improvements and paying taxes during the continuance of the life-estate, is not entitled to the benefits of the occupying-claimants law.

**Pleading—Counterclaim.**—A defendant may in his answer allege matters that will be a defence or counterclaim to any cause of action which the plaintiff may prove and recover for within the allegations, although such cause of action may not be of the precise character indicated by all those allegations, and although such matter might not be a defence or counter-claim if all such allegations should be proved.

**Same—Sham Denial—Denial of Information.**—A denial of any knowledge or information sufficient to form a belief cannot be disregarded, but makes an issue while it remains in the answer, even though, because the matter is of record, easily accessible to the party, it might be struck out as sham upon motion.

Appeal by defendant Isaacson from an order of the district court for Houston county, *Farmer*, J., presiding, sustaining a demurrer to the second defence pleaded in his answer.

*W. H. Harries*, for appellant.

*E. H. Smalley*, for respondent.

GILFILLAN, C. J. This is an action for partition, and comes here by appeal from an order sustaining a demurrer to one of the defences set up in the answer of the defendant Isaacson. The com-

plaint states the source of plaintiff's title thus: That February 7, 1859, Michael Sullivan was seized in fee of the land in question, and on that day died, leaving a will, (afterwards duly proved,) in which he devised his real estate thus: "After what the law allows my wife, the residue to be equally divided between my wife, Margaret, and sister, Julia Sullivan, and Timothy Sullivan, my brother." The land in question was afterwards duly set off by the probate court for the dower of the widow, who appears to be still living. The remainder of the lands left by deceased were sold to pay his debts. The complaint alleges that the plaintiff is the owner of the undivided interest of Timothy Sullivan, but does not state how he acquired it. It then alleges conveyances showing Isaacson to be the owner of the interest held by Margaret Sullivan, through a conveyance by her long after her dower was so assigned. The complainant claims and asks the judgment of the court that he and the defendant Julia Sullivan each own an undivided one-half of the fee, and that the defendant Isaacson is tenant in dower during the life of said Margaret. If this claim that Isaacson is only tenant in dower be true, then the action for partition will not lie against him; for his interest as such tenant in dower extends to the whole of the land of which partition is sought, and the "judgment and partition cannot affect tenants or persons having claims as tenants in dower, by the curtesy, or for life, to the whole of the property which is the subject of the partition." Gen. St. 1878, *c.* 74, § 9.

But it is evident that the complaint aims to have such a construction of the will of Michael Sullivan as will exclude any claim of Isaacson to any interest in the reversion. It therefore calls for a determination of his title as a reversioner. If the determination should be that he is tenant in common in the reversion with plaintiff and Julia Sullivan, then partition of the reversion may be made, though it cannot extend to nor affect his estate as tenant in dower. In the action for partition the title of all the parties may be inquired into and determined, (Gen. St. 1878, *c.* 74, § 8;) and partition of the reversion may be made though the lands be in possession of one by virtue of an outstanding particular estate. *Cook* v. *Webb*, 19 Minn. 129, (167.)

The answer of defendant Isaacson first denies any knowledge or information sufficient to form a belief of the allegations in the complaint respecting the title of the respective parties, including those setting forth the ownership, death, and will of Michael Sullivan, and its probate; the assignment of dower, and the various conveyances through which it alleges Isaacson derives his title. This form of denial is permitted by the statute, and puts in issue the matters thus denied. But the plaintiff urges that the proceedings and conveyances thus denied being, as the complaint alleges, of record in the county, this form is not sufficient, and that the denial must be specific or direct. When a motion is made to strike out such denials as sham, and it is made to appear, not by the complaint alone, but by other evidence, that the matter denied is of record, easily accessible to the defendant,—as where it is of record in the county where defendant resides, so that it may be said he purposely avoids informing himself of that which he has only to look to in order to see,—the denials will be struck out. But they cannot be disregarded so long as they remain in the answer. While there they make an issue.

The answer does not allege any title in defendant Isaacson. But the part of it demurred to alleges a conveyance to him from one Olsyn, for which he paid a valuable consideration, and under which he, in good faith and under color of title in fee, peacefully took possession of the land, and that before notice of any defects in the title he made certain improvements thereon, and during several years specified paid the taxes levied upon it; and it asks that, in case the title to the land is found in plaintiff, the defendant be allowed the value of said improvements, and the amount so paid for taxes and interest.

The demurrer to this part of the answer raises the question whether the provisions of what is commonly known as the "Occupying-Claimants Law" are applicable to this action. The provisions of this law (Gen. St. 1878, c. 75, §§ 15–24) intend to give a right in the nature of a lien upon the land to one who goes into possession and makes improvements and pays taxes, under the conditions prescribed. Of course, those conditions may exist where the action is for partition as well as where it is in the nature of ejectment. The only difficulty arises in the attempt to apply the provisions of the law to the proced-

ure in the former action. The statutory mode of protecting and enforcing the right cannot be literally followed in such an action. Sections 15–18 clearly contemplate an action for the possession. And the mode of enforcing the occupant's lien (and it is the only one expressly provided by the statute) is by arresting execution for delivery of possession until the claim is paid, or, where the occupant does not claim under official deed, until he fails to pay to plaintiff the value of the land without improvements, less taxes and assessments, upon the demand of the plaintiff, as provided in section 18. There are actions in which, though the lien exists, the provisions we have referred to for its enforcement cannot be literally complied with. Yet the statute clearly contemplates that the lien shall be recognized and enforced in other than possessory actions. Thus section 24 enacts: "All the provisions of this act shall apply to cases where occupant is not, as well as where he is, in actual possession; and also to cases where the action is brought by the occupant himself to determine an adverse claim." And section 21 enacts: "In case an action is brought for damages for trespass upon said land, or for the rents and profits or use and occupation thereof, or in any other form, but which action is in effect one testing the validity of the title thereto, all the foregoing provisions of this act shall, so far as possible, be complied with."

It is possible that the lien be recognized, ascertained, and adjudged in any action, whatever its form; and we think, in any action the result of which may determine and cut off the claim to a lien, the lien may be asserted, and, if it be possible for the court to enforce it by any procedure appropriate to that action, though that not provided in sections 15–18, the court must determine, and, if found to exist, enforce it. If the action be not to test the title generally, as an action under the statute to determine adverse claims, but only to test the validity of a specific conveyance or claim, which was the case of *Sanborn* v. *Mueller*, 38 Minn. 27, (35 N. W. Rep. 666,) and which does not necessarily bring the lien in question, and which cannot result in cutting it off or disturbing the possession of the occupant, it does not come within the statute. As we have seen, the title may be determined in an action of partition. Liens may be established and enforced in such an action, and, if not asserted, the claim of any

party to it to a lien will be cut off, so that any party to that action may assert any lien that he has. Whether the claim of the defendant to a lien comes within the intent of the occupying-claimants law will depend on the relation he bears to the title. If, as the complaint alleges, he is a tenant for life, he has no lien under the rules of the common law, either for the improvements or taxes; for, as a general rule, a tenant for life cannot charge the inheritance with the cost of improvement, and it is his duty to discharge ordinary taxes; and, if he have that estate, whatever other interest he may have, he must be assumed to be in possession as tenant for life, for he could not justify his possession except as such tenant.

The occupying-claimants law charges the owner with the cost of improvements made and the taxes paid by the occupant, without requiring that the owner should have consented. The reason upon which such laws can be sustained is that fault is to be imputed to an owner who neglects to assert his title as to one who is in possession, apparently occupying as owner. "The natural equity" which some courts assume as the ground for sustaining such laws cannot exist as against an owner who has no means of preventing the acts of the occupant, and no reason to give him notice of the wrongful character of his possession. As between the owner of the reversion and the owner of a life-estate, the possession of the latter can raise no duty on the part of the former to assert his title. An owner of the reversion sees one whom he knows to be a tenant for life in exclusive possession, as he has a right to be, making improvements, as he has a right to do, and paying taxes, as is his duty to do. He can do nothing to prevent his possession, improvements, or payment of taxes. He has a right to assume that he is doing these things as tenant for life. No fault can be imputed to the owner of the reversion for not attempting to interfere. Such a case does not come within the reason and spirit of the occupying-claimants law, and we do not think its provisions were intended to apply to such a case; so that, if on the trial it appear that Isaacson was tenant for life, the defence demurred to will fail.

But the defendant has put in issue all the allegations of the complaint as to the title, and it is necessary for plaintiff to prove them,

or at any rate to prove facts within those allegations sufficient to make out his right to bring the action. He need not prove them all, as all are not necessary to his maintaining the action. For instance, he need not prove the dower to have been assigned in this land; and, if it be not proved, the effect, on the defence demurred to, of the tenancy for life, will not have to be considered. In that case that part of the answer may be proper. A defendant may in his answer allege any facts that will be a defence or counterclaim to any cause of action which the plaintiff may prove and recover upon within the allegations of his complaint, although it may not be of the precise character indicated by the allegations taken all together, and although it might not be a defence or counterclaim if all the allegations were proved. For the reasons, therefore, that the plaintiff may maintain the action, though the existence of the life-estate be not shown, and that unless it be proved the facts alleged in the answer will entitle the defendant to the protection of the occupying-claimants law, the demurrer ought to have been overruled.

Order reversed.