## LEHIGH VALLEY COAL CO. v. YENSAVAGE.

(Circuit Court of Appeals, Second Circuit. October 27, 1914. Dissenting Opinion, November 10, 1914. On Rehearing, November 30, 1914.)

### No. 277.

**1. COURTS (§ 276*)—FEDERAL COURTS—JURISDICTION.**

Where jurisdiction over the subject-matter depends on diverse citizenship, or because the action is between an alien and a citizen, and the parties are in fact citizens of different states, or one is a citizen and the other an alien, the objection that the suit is brought in a district where neither is an inhabitant does not survive general appearance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*]

**2. COURTS (§ 325*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP—PROOF—DISTRICT OF SUIT.**

The rule that, where the record requires proof of diversity of citizenship in order to show federal jurisdiction, it is enough that issue is taken on the allegations and that the record contains no proof, does not apply where the objection goes only to the proper district of trial, especially where the defect appears on the face of the complaint, in which case it may be waived by the defendant, and is waived by his appearing and pleading to the merits, though he attempts to preserve the point by joining a demurrer to the court's jurisdiction over him personally, and though such was proper state practice.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 884; Dec. Dig. § 325.*]

**3. COURTS (§ 325*)—FEDERAL COURTS—JURISDICTION—ISSUES—DIVERSITY OF CITIZENSHIP.**

Where, in a suit in a federal court depending on diversity of citizenship, proper citizenship appears on the face of the complaint, defendant does not waive his right to plead to the jurisdiction by originally pleading to the merits, provided, as soon as it appears that the citizenship has not been properly alleged, defendant applies for leave to withdraw his general appearance and plead to the jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 884; Dec. Dig. § 325.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**4. COURTS (§ 276*)—FEDERAL COURTS—JURISDICTION—PLACE OF TRIAL—PLEA TO MERITS AND FORM.**

Where plaintiff, an alien, sued defendant, a Pennsylvania corporation, in the federal court of the Eastern district of New York, alleging that plaintiff was a resident and citizen of New York, and that defendant was a citizen of Pennsylvania, and defendant pleaded to the merits, and, on its subsequently appearing that plaintiff was an alien, continued to press the plea to the merits, with a plea to the jurisdiction, the option, if any,

---

to withdraw the plea to the merits and plead to the jurisdiction was waived, and the latter plea was therefore properly denied.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*]

5. MASTER AND SERVANT (§ 88*)—INDEPENDENT CONTRACTOR.

Where plaintiff at the time of his injury was working in a coal mine pursuant to employment by another miner, working under contract with defendant, plaintiff was a servant of defendant company, and not of an independent contractor, and hence defendant was liable for a failure to take statutory precautions for plaintiff's safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

Rogers, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

This was an action in the District Court for the Eastern District of New York, commenced on November 4, 1912, for damages arising from an accident while in the defendant's employ.

The original complaint stated that the plaintiff was a resident and citizen of the county of Kings, and that the defendant was a resident and citizen of the state of Pennsylvania. Plaintiff served an amended complaint on the 6th of February, 1913, repeating the allegation that he was a resident and citizen of the county of Kings and that the defendant was a resident and citizen of the state of Pennsylvania. Defendant denied in each case the allegations of the plaintiff's residence, and the case came to trial on the 23d of June, 1913.

On the plaintiff's cross-examination it appeared that he was an alien. Thereupon the defendant made the following objection: "For the purpose of the record, in order that it may appear that we do interpose the objection, since it appears upon the record of the case, I ask that the complaint be dismissed, and the action be dismissed from this court, on the ground that this court has no jurisdiction over this action; the action being one brought by an alien against a corporation organized under the laws of the state of Pennsylvania, and a citizen of Pennsylvania, having its principal office and place of business in Pennsylvania, according to the allegations of the complaint."

This motion was denied, and exception taken. At the close of the plaintiff's case the defendant renewed its motion in the following terms: "The defendant moves to dismiss on the ground that it appears by the record that this court has no jurisdiction." This was denied, and an exception again taken. The motion was again repeated at the close of all the testimony, again denied, and an exception taken.

It appeared that the plaintiff had been employed by a miner in the employ of the defendant, and the point was also raised that the plaintiff was not directly in the employ of the defendant, as contemplated by the Pennsylvania statutes. More facts in regard to this issue appear in the opinion. The point was overruled, and an exception taken.

The jury returned a verdict in the sum of $37,500, the injuries being extremely severe, which the court afterwards reduced to $25,000, which reduction the plaintiff accepted, rather than take a new trial. A writ of error was sued out upon the judgment so entered, and the case now comes before this court.

Clifton P. Williamson, of New York City, for plaintiff in error.
George C. Holt, of New York City, for defendant in error.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LEARNED HAND, District Judge.   Upon the point of jurisdiction we think the court below was right.   Roberts v. Lewis, 144 U. S. 654, 12 Sup. Ct. 781, 36 L. Ed. 579, decided that a denial of the allegation of citizenship raised the question of jurisdiction over the subject-matter, and that, where the record shows no proof on the issue, the court has no power to proceed.   The proof under the pleadings here at bar did not show the exact ground of jurisdiction over the subject-matter which was alleged, but it did show a controversy between an alien and a citizen of the state of Pennsylvania, over which no one questions that the District Court for the Eastern District of Pennsylvania would have had jurisdiction.

[1]  The first question is whether in such a case the District Court for the Eastern District of New York had jurisdiction.   It is well settled by a long line of authorities that where jurisdiction over the subject-matter depends upon diverse citizenship, and the parties are in fact citizens of different states, the objection that the suit is brought in a district where neither is an inhabitant does not survive general appearance.   Interior Construction Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401.   That is to say, the limitations imposed by Congress as to the place of trial are only for the convenience of the defendant, and do not involve the jurisdiction of the court at all, properly speaking.   The difference of opinion which at one time existed in the case of removed causes (Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264; Re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Re Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061), never applied to those of original jurisdiction.

When the plaintiff is an alien, the same jurisdiction over the subject-matter exists as when there is diversity of citizenship.   Re Tobin, supra, would be a complete answer after appearance in a suit by an alien to the objection that the action was brought in the wrong court, were it not that Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, throws some doubt upon whether the decision in Ex parte Tobin, supra, may not have turned upon a question of procedure.   Certainly it is true that in Ex parte Harding, supra, the court said that it would not usually consider such questions upon application for mandamus.   We believe, nevertheless, that the decisions in Ex parte Tobin, supra, and Ex parte Nicola, 218 U. S. 668, 31 Sup. Ct. 228, 54 L. Ed. 1203, when made, were meant to be upon the merits, though, as Judge Lewis showed in Sagara v. Chicago, etc., Ry. (C. C.) 189 Fed. 220, the question must remain open to some doubt.

However, there is no conceivable reason why a different rule should apply to the case of an alien suing a citizen out of the proper district, from that which governs a citizen so suing, and we do not understand that the defendant so claims.

[2]  The real question, therefore, is whether the defendant has lost the point by appearance and pleading to the merits.   As we have said, where the record requires proof of diversity of citizenship, it is enough that issue is taken on the allegations, and that the record contains no proof.   Roberts v. Lewis, supra.   But we think that the rule is different where the objection goes only to the proper place of trial.   Cer--

tainly, where the defect appears upon the face of the complaint, a defendant waives the objection by appearing and pleading to the merits, even though he tries especially to reserve the point by joining a demurrer to the court's jurisdiction over him personally. Western Loan Co. v. Butte & Boston Mining Co., 210 U. S. 368, 28 Sup. Ct. 720; 52 L. Ed. 1101. And this is no less true in actions at law in states whose practice reserves to defendants the right to do exactly that thing. In this respect federal courts do not follow the state practice. Similarly, when, although the complaint on its face shows jurisdiction, the defendant has been served out of the place of its residence, he may not couple a demurrer to the court's jurisdiction over him personally with a plea to the merits. St. Louis & San Francisco Ry. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659.

It is true that the demurrer to the jurisdiction in the last case would seem to have been bad anyway, as it raised only the facts stated on the face of the complaint; but the decision went upon the broader ground that the two pleas could not be coupled, though that was allowed by the state practice. These cases finally dispose of the position that the state statutes are to control on the effect of a general appearance and on the right to couple pleas in abatement with pleas to the merits. They show that Roberts v. Lewis, supra, decided no more than was well settled law before; i. e., that the substantial jurisdiction of the District Court must appear in the record, and that when an allegation has been traversed it does not constitute proof. The unfortunate ambiguity arising from the use of the word "jurisdiction" has, we think, been the reason for supposing that the decision in fact went any further than this.

The case at bar presents only this difference from St. Louis & San Francisco v. McBride, supra, and Western Loan Co. v. Boston & Butte Mining Co., supra, that the defendant in those cases was apprised of all the facts when he coupled together his plea to the merits and his plea to the jurisdiction, while here he was not. We do not think it necessary to decide that the defendant should miscarry for taking the plaintiff at his word, and pleading to the merits upon the faith of an allegation which, if true, would have entitled him to sue in the court which he chose. We do not, therefore, wish to be understood as deciding, where the plaintiff alleges residence in the district of suit, and the defendant traverses the allegation only by denying any information about it, that if, during the proceedings, it appears that the plaintiff cannot prove his allegation, the defendant's general appearance has bound him.

[3] All we wish to lay down is that, when once the truth appears, then at least the defendant must choose between his plea in abatement and his plea to the merits. Assuming that it is not bad to couple the two positions before the defendant is informed, there can be no justification in allowing him to proceed thereafter in the alternative. The rule which forbids him to do this when advised from the outset must surely forbid him to continue with the same option after the option is once presented. We therefore believe that to proceed with a general plea to the merits, when once the facts were out, was entirely within

the rule laid down in the two cases cited, regardless of whether the defendant could or could not reserve the point in any way merely by a traverse to the allegation.

The proper course, therefore, for the defendant, was to ask leave to withdraw its appearance and to plead specially, a practice well recognized in other situations raising the same question. Hohorst v. Hamburg American Co. (C. C.) 38 Fed. 273 (reversed on another point in Re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211); Jenkins v. York Cliff Improvement Co. (C. C.) 110 Fed. 807; Hagstoz v. Mut. L. Ins. Co. (C. C.) 179 Fed. 569. Such leave would have been by no means a matter of course. It would have rested in the discretion of the court. U. S. v. Armejo, 131 U. S. lxxxii Append., 18 L. Ed. 247; Re Ulrich, 3 Ben. 355, Fed. Cas. No. 14,327. In its consideration the court would have had to inquire how far the defendant knew the truth, or had already been put upon inquiry, before the trial. It is, of course, possible that, had such a practice been adopted, the court in the exercise of its discretion would have concluded not to allow the general appearance to be withdrawn; and in any event the issue was one in which the plaintiff had the right to be heard.

In Leonard v. Merchants' Coal Co., 162 Fed. 885, 89 C. C. A. 575, this court affirmed the ruling of a referee who in similar circumstances dismissed the complaint. The opinion certainly assumes that the New York Code controlled, and that a plea in abatement like this, could stand along with a plea to the merits. St. Louis & San Francisco Ry. v. McBride, supra, was apparently not brought to the court's attention, however, and Western Loan Co. v. Boston & Butte, supra, had not been decided. These cases are, of course, controlling, even as against a former decision of this court. There was, besides, a feature of the case which distinguishes it as a decision from that now at bar. When the fact appeared that the plaintiff lived in Brooklyn, the referee took testimony to see whether the defendant had not known the facts at the time of appearing, and found against him on that issue. This was exactly the issue which the plaintiff here had the right, but never the opportunity, to try, and adopted, though a little informally, the only permissible practice. It is true that, after the referee had decided this point against him, the plaintiff in that case asked leave to present further proof upon the issue, which the referee refused to grant upon the ground that the issue would be irrelevant, a reason which, under the decision we now make, was erroneous. Yet the mere decision, taken narrowly, was correct, in that the referee had once passed upon the issue, and was not bound to reconsider it, even though the grounds for his refusal to do so were not tenable.

[4] We therefore conclude that the decision of the District Court was correct upon the pleadings as they stood, and that as the defendant did not adopt the only allowable course, but continued to press his plea to the merits with his plea to the forum, he lost his option. No doubt this is a somewhat rigid application of the rule, but no more we think than is required by the two decisions upon which we rely. The plea is at best very technical, and in the case at bar has nothing upon the merits to commend it. A defendant may justly complain of being

taken out of his domicile for the trial of a cause, but his right depends only upon his own convenience, and there is no reason why he should be allowed to reserve such a point while he continues to contest the actual merits of the controversy, else we have what this case itself presents, the expense of a trial and appeal, with corresponding delay, in the end all turning upon whether the defendant has been sued in the proper place. Doubtless this result is unavoidable if the defect goes to the very grant of power to the court itself, since a federal court has no general jurisdiction to determine disputes which do not come within the Constitution and the statutes; but, as we have shown, no such question here arises, and it is of consequence that procedure should not admit of the disposition of causes wholly independently of their merits, when the law does not inevitably involve that unfortunate result.

[5] The next question is of Terowsky's relation to the defendant: Was he an independent contractor? The only case in which any Pennsylvania court appears to have passed upon this matter is unfortunately a decision of the Superior Court, and therefore not binding upon us, though it is quite in point. Mingak v. Vesta Coal Co., 51 Pa. Super. Ct. 584. The other cases all concern the payment of wages of the mine laborers, except Welsh v. Charles Parrish & Co., 148 Pa. 599, 24 Atl. 86, and Welsh v. Lehigh & Wilkesbarre Coal Co. (Pa.) 5 Atl. 48. In these cases the facts are not very clear, except that the job which was being done under written contract was to drive an air shaft to a colliery, to which it had not yet reached. The defendants had no control over it, except general supervision to see that it was done satisfactorily. This was not part of the business of mining. Such a work might well be regarded as done under an independent contract.

In the case at bar the necessary conclusion of the defendant's theory is that Terowsky, as well as the plaintiff, was not an employé of the company, and that they owed him none of the duties of a master to a servant. The company is therefore not in the business of coal mining at all, in so far as it uses such miners, but is only engaged in letting out contracts to independent contractors, to whom they owe as little duty as to those firms which set up the pumps in their mines. Thus what is confessedly only a means of speeding up the miners and their helpers becomes conveniently an incidental means of stripping from them the protection of the statute. The laborers, under this contention, are to have recourse as an employer only to one of their own, without financial responsibility or control of any capital; the miner is to take his chances in the mine without the right to a safe place to work, or any other protection except as an invited person. This misses the whole purpose of such statutes, which are meant to protect those who are at an economic disadvantage.

It is true that the statute uses the word "employed," but it must be understood with reference to the purpose of the act, and where all the conditions of the relation require protection, protection ought to be given. It is absurd to class such a miner as an independent contractor in the only sense in which that phrase is here relevant. He has no capital, no financial responsibility. He is himself as dependent up-

on the conditions of his employment as the company fixes them as are his helpers. By him alone is carried on the company's only business; he is their "hand," if any one is. Because of the method of his pay one should not class him as though he came to do an adjunctive work, not the business of the company, something whose conduct and management they had not undertaken.

Such statutes are partial; they upset the freedom of contract, and for ulterior purposes put the two contesting sides at unequal advantage; they should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them.

The other exceptions do not require consideration, and the judgment is affirmed, with costs.

ROGERS, Circuit Judge (dissenting). I am unable to concur in the opinion of my Associates. The plaintiff below has recovered a verdict for $37,500, which with his consent was reduced so that judgment was entered for $25,036. No one can read the testimony in the record in this case without feeling the utmost sympathy for the plaintiff, whose injuries, resulting from the explosion for which he sues, have left him a pitiable wreck. If we could decide cases upon sympathy, it would be easy to reach a conclusion, and to affirm the judgment. But in the administration of justice courts proceed according to the law, and have no right to proceed contrary thereto, even in a case which appeals as strongly as this does to the pity and compassion of mankind. My Associates recognize as fully as I do the duty which rests upon us in this respect. The difficulty is that we differ in our understanding of the principles which are applicable to the unfortunate facts as we find them in the case at bar.

This action was commenced in the United States District Court for the Eastern District of New York. The complaint, which was verified, alleged that the plaintiff was a citizen and resident of the city of New York, borough of Brooklyn, county of Kings, state of New York, and that the defendant was a corporation organized under the laws of Pennsylvania. The defendant answered the complaint, and by its answer put in issue the allegations relating to plaintiff's citizenship. Afterwards an amended complaint was filed, which contained similar allegations to those in the original complaint as to the plaintiff's citizenship and residence, except that it was stated that the plaintiff was a resident of the Eastern district of New York. The answer to the amended complaint again put in issue the allegations as to the citizenship and residence of the plaintiff. Upon the trial it was brought out upon cross-examination of the plaintiff that he was in fact an alien. He was a Lithuanian and had never been naturalized. As soon as this fact was disclosed, the defendant below objected to the jurisdiction of the court, and a motion was made to dismiss. The motion was denied, and an exception was duly taken. At the close of the plaintiff's case the motion to dismiss for lack of jurisdiction was renewed, and again denied, and exception was again taken. At the close of the whole case the plaintiff was permitted, over the objection of the defendant, to amend his complaint by substituting the following paragraph:

"First. That the plaintiff is a resident of the city of New York, borough of Brooklyn, county of Kings, state of New York, and Eastern district of New York, and is an alien and subject of the empire of Russia."

The defendant again renewed the motion to dismiss, and the motion was once more denied, and an exception was again taken. Upon these facts the question presented to this court is whether the District Court of the United States for the Eastern District of New York had the right to hear and decide the case after the fact was disclosed upon the trial that the plaintiff was an alien.

The general rule is that all aliens who are sui juris, and not otherwise specially disabled by the law of the place where the suit is brought, may maintain suits in the proper courts; it being understood, however, that alien enemies are not within the rule. Taylor v. Carpenter, 3 Story, 458, Fed. Cas. No. 13,784. And no jurisdiction, it has been held, has been conferred upon the federal courts of a case in which both of the parties are aliens. Montalet v. Murray, 4 Cranch, 46, 2 L. Ed. 545; Mossman v. Higginson, 4 Dall. 12, 1 L. Ed. 720. But a federal court has jurisdiction of a suit brought by an alien against a citizen, or by a citizen against an alien. Chappedelaine v. Dechenaux, 4 Cranch, 306, 2 L. Ed. 629; Reinach v. Atlantic, etc., R. Co. (C. C.) 58 Fed. 33. Moreover, the alien need not reside abroad to sue. Breedlove v. Nicolet, 7 Pet. 413, 8 L. Ed. 731.

No question is raised as to the right of the plaintiff below to bring his suit. The right to sue, and to sue in a federal court, is beyond question. But was the suit brought in the right federal court? The Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73) provided that no civil suit should be brought before the Circuit or District Courts against an inhabitant of the United States in any other district than that whereof he was an inhabitant or in which he shall be found at the time of serving the writ. And this provision was incorporated, in substance, in various acts of Congress subsequently passed. But in 1887 and in 1888 acts were passed which provided that a civil suit must be brought in the district of which the defendant is an inhabitant, except when founded on the residence of parties in different states, in which case it was provided that the case should be brought in a district of which either party is an inhabitant. Act March 3, 1887, c. 373, 24 Stat. 552; Act Aug. 13, 1888, c. 866, 25 Stat. 434.

The suit now before the court could not be based on diversity of citizenship; the plaintiff not being a citizen of the United States. He was bound, therefore, to bring his suit in the district of which the defendant was at the time an inhabitant. And the defendant was not an inhabitant of the Eastern district of New York, nor of any district in New York. But, being incorporated under the laws of Pennsylvania, it was an inhabitant of that state, and could not be an inhabitant of any other state, in which it had not been incorporated, even though it was engaged in business in the other state. In Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274, Chief Justice Taney said in 1839:

"A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. * * * It must dwell in the place of its creation, and cannot migrate to another sovereignty."

In Shaw v. Quincy Mining Co., 145 U. S. 444, 450, 12 Sup. Ct. 935, 937 (36 L. Ed. 768) (1892) the court refers to the above statement made by Chief Justice Taney and says:

"This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship, of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it."

And the court, after a review of all the decisions, held that a corporation incorporated in one state only, could not be compelled to answer, in a Circuit Court of the United States held in another state, in which it has a usual place of business, to a civil suit at law or in equity, brought by a citizen of a different state. In that case the Quincy Mining Company, a corporation of Michigan, having appeared specially for the purpose of taking the objection that it could not be sued in the Southern district of New York, by a citizen of another state, the court said that there could be no question of waiver, and it denied the petition for a writ of mandamus to the judges of the Circuit Court of the United States for the Southern District of New York to command them to take jurisdiction of the suit.

In that case the suit was brought by a citizen, and in this it is brought by an alien. But an alien has no more right than a citizen to sue a corporation in the federal courts in a district in which it is not an inhabitant. In Galveston, etc., Railway Co. v. Gonzales, 151 U. S. 496, 506, 14 Sup. Ct. 401, 405 (38 L. Ed. 240) (1893), the Supreme Court states that:

"The provision that no civil suit shall be brought against any person in any other district than that whereof he is an inhabitant is of universal application, except that, if the plaintiff be also a citizen, he may bring it in his own district, if he can obtain service upon the defendant in that district."

And the rule was established that, if an alien desires to commence an action or bring a suit against a citizen of the United States, he must resort to the domicile of the defendant in order to bring it. In that case a citizen of Mexico brought suit against a Texas corporation in the Circuit Court for the Western District of Texas. The corporation had its principal office within the Eastern district of Texas but operated a line of railway in the Western district, where it maintained a ticket and freight office and depot and had an agent on whom process under the laws of Texas might be served. Defendant appeared specially and objected to the jurisdiction of the court, interposing a plea in abatement.

The question remains whether the objection that the suit was brought in the wrong district was properly and seasonably raised. The plaintiff below alleged in his original and in his amended complaint that he was a citizen of New York. And the defendant in its answer denied that it had any knowledge or information sufficient to form a belief as to the truth of the allegation. Under the common law a denial in this form was insufficient to put the facts so denied in issue, and was treated as an admission of the truth of the facts as alleged. See 31 Cyc. 199. A traverse not made positively, but on information and

belief, would be stricken out at common law. 31 Cyc. 189. But in a large number of states these rules have been changed by statutes which provide that, when defendant has no knowledge or information sufficient to form a belief respecting any or all of the facts alleged in the complaint, he may deny such knowledge or information in his answer, and this will put in issue the facts to the same extent as though they had been denied. 31 Cyc. 198. And such is the law of the state of New York. Warner v. U. S. Land, etc., Co., 53 Hun, 312, 6 N. Y. Supp. 411; Nichols v. Corcoran, 38 Misc. Rep. 671, 78 N. Y. Supp. 242; Stockton v. Kenney, 24 Misc. Rep. 300, 52 N. Y. Supp. 1006.

It is true that facts either actually or presumptively within the knowledge of the defendant cannot properly be put in issue by a denial of knowledge or information sufficient to form a belief. But it is not necessary to inquire whether the defendant actually or presumptively knew that the plaintiff was not a citizen at the time it put in its answer. For, if we could assume that its answer was sham and evasive, so long as it remains on the files it raises an issue, even though it might have been the duty of the court to have stricken it out if convinced that it was in fact evasive and a sham. See Smalley v. Isaacson, 40 Minn. 450, 42 N. W. 352; 31 Cyc. 200, 201. According to the law of New York the citizenship of the plaintiff was in issue. And the practice in a federal court in common-law cases conforms to the practice of the state in which the federal court is sitting. In Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579 (1892), the court said:

"Doubtless, so long as the rules of pleading in the courts of the United States remain as at common law, the requisite citizenship of the parties, if duly alleged or apparent in the declaration, could not be denied by the defendant, except by plea in abatement, and was admitted by pleading to the merits of the action. Sheppard v. Graves, 14 How. 505 [14 L. Ed. 518]. But since 1872, when Congress assimilated the rules of pleading, practice, and forms and codes of procedure in actions at law in the courts of the United States to those prevailing in the courts of the several states, all defenses are open to a defendant in the Circuit Court of the United States, under any form of plea, answer, or demurrer, which would have been open to him under like pleading in the courts of the state within which the Circuit Court is held."

In the above case the plaintiff alleged in his petition that he was a citizen of Wisconsin. As such he sued a defendant who was a citizen of Nebraska, suit being brought in Nebraska. Plaintiff alleged his Wisconsin citizenship in his petition. Defendant in his answer denied each and every allegation in the petition. The court held that this put the plaintiff's citizenship in issue.

In Leonard v. Merchants' Coal Co., 162 Fed. 885, 89 C. C. A. 575 (1908), this court held that under the New York practice, followed by the federal courts sitting in New York state, a defendant does not waive his right to object to the jurisdiction by including in his answer every defense upon which he relies. And in that case a foreign corporation sued in a federal court entered a general appearance and demurred to the complaint for want of jurisdiction, the complaint alleging no jurisdictional facts. An amended complaint was filed, alleg-

ing diversity of citizenship and that plaintiff was a resident of the Southern district of New York. Defendant thereupon answered, denying that plaintiff was, a resident of the Southern district, and alleging that he was a resident of the Eastern district. The answer also joined issue on the merits and set up a counterclaim. Upon the trial the testimony showed that the averments of the answer were correct as to plaintiff's residence. When this fact was disclosed, the referee before whom the cause was tried stopped the taking of further proofs on the merits and dismissed the complaint. We sustained the dismissal. This case I agree is overruled.

I do not question the rule that an act of Congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts, but is rather in the nature of a personal exemption in favor of the defendant and is one which he may waive. Neither do I overlook the fact that in numerous cases it has been held in the federal courts that a general appearance waives the objection that suit is brought in the wrong district. See 3 Cyc. 522. But those cases are not applicable to the facts of this case under the system of pleading and practice established in the local state in which the court below was sitting.

The majority opinion, however, states that a general appearance is a waiver of the objection that the wrong forum has been selected, and that such an objection cannot be raised so long as the general appearance stands. The opinion states that the defendant's proper course was to ask leave to have a mistrial declared, to withdraw its general appearance, and then to appear specially to object to the forum. I have no doubt that one who puts in a general appearance, having knowledge at the time he does so of irregularities in the service of process, waives them and submits himself to the jurisdiction of the court, and that he cannot thereafter without the consent of the court withdraw his general appearance. In such case he must, of course, apply to the court for leave to withdraw his appearance. That was what was decided in the Matter of Isaac Ulrich, 3 Benedict, 355, Fed. Cas. No. 14,327 (1869). So in United States v. Armejo, 131 U. S. lxxxii, Append., 18 L. Ed. 247, it was held that after the lapse of a term a general appearance could not be changed to a special appearance without leave of the court first obtained. In Hohorst v. Hamburg American Packet Co. (C. C.) 38 Fed. 273 (1889), the court decided that it had power to allow a general notice of appearance to be amended, so as to make it special. In Jenkins v. York Cliffs Imp. Co. (C. C.) 110 Fed. 807 (1901), it was held that, while the withdrawal by a defendant by permission of the court of an appearance entered through a misapprehension relieved him of an unintended waiver of fundamental questions as to the jurisdiction, it did not authorize him to attack the service made upon him on a mere matter of form. In Hagstoz v. Mutual Life Ins. Co. of New York (C. C.) 179 Fed. 569 (1910), it was held that where, in a suit against a foreign corporation doing business in Pennsylvania, the plaintiff, after defendant's general appearance, amended the præcipe and summons, so as to allege that plaintiff was a resident and citizen of New

Jersey, instead of Pennsylvania, defendant would thereupon be permitted to withdraw its general appearance in order to attack the court's jurisdiction.

These are the cases the majority opinion cites in support of the position assumed that, having entered a general appearance, the defendant could not upon the trial have the case dismissed upon motion made as soon as it appeared from the testimony that the plaintiff was an alien and not a citizen. I am unable to discover anything in any of the opinions rendered in the cases cited which establishes that principle, as applied to the facts of this case. Under the law of the forum in which this suit was commenced the defendant, as we have seen, did not by his answer waive his right to object on the ground that the suit was brought in the wrong forum, provided it developed on the trial that the plaintiff was not a citizen as he had alleged. As his appearance and answer did not in this forum amount to a waiver, there could be no necessity for a formal withdrawal of them. That can be necessary only in a forum where they do amount to a waiver.

I am unable to see that Western Loan & Savings Co. v. Butte & Boston Consolidated Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101 (1907), rules this case and justifies the conclusion reached by my Associates. In that case plaintiff was a citizen of Utah and defendant a citizen of New York, and the action was commenced in the Circuit Court for the District of Montana. The defendant demurred to the complaint on the ground (1) that the court had no jurisdiction; (2) that it had no jurisdiction of defendant; (3) that the complaint did not state facts sufficient to constitute a cause of action; (4) that it was uncertain; (5) that it was unintelligible. The court overruled the demurrer on the first three grounds and sustained it on the fourth and fifth grounds. Thereupon an amended complaint was filed, and a demurrer was again interposed. The court below held that inasmuch as the demurrer was interposed upon jurisdictional and other grounds, and was not confined to jurisdiction over the person alone, but reached the merits of the action, the defendant had waived its personal privilege. Thereafter the trial judge reversed his ruling and dismissed the case for lack of jurisdiction. This final ruling of his was reversed by the Supreme Court, which held that by pleading both to the jurisdiction and the merits defendant had waived its personal privilege; the case being within the general jurisdiction of the court, although instituted in the wrong district.

In the case at bar the facts are different. The defendant in its answer stated that:

"Defendant denies that it has any knowledge or information sufficient to form a belief as to any of the allegations contained in the paragraph or subdivision of the complaint designated '1.' "

Paragraph 1 of the complaint is as follows:

"1. That the plaintiff is a resident and citizen of the city of New York, borough of Brooklyn, county of Kings, state of New York."

And when on cross-examination the plaintiff testified that his father never lived in the United States and that he himself had never taken out citizenship papers, the defendant's counsel immediately asked that

the complaint be dismissed on the ground that the court had no jurisdiction over the action, being one brought by an alien against a corporation organized under the laws of the state of Pennsylvania, and a citizen of Pennsylvania, having its principal office and place of business in Pennsylvania, according to the allegations of the complaint. The motion to dismiss was denied, and exception taken.

The defendant, in my opinion, was entirely within its rights when it asked to have the case dismissed as soon as the fact was developed that plaintiff was an alien. Until that time it was without knowledge of the plaintiff's want of citizenship, and so not bound to do more than to put the matter in issue. In the Western Loan & Savings Co. Case, supra, defendant had knowledge of the defect in jurisdiction, and pleaded to the merits at the same time that he pleaded the want of jurisdiction. I think the two cases are distinguishable in principle.

## On Rehearing.

PER CURIAM. As we adhere to our original opinions after having given the question herein the most careful attention, we think the petition for a rehearing must be denied.

Regarding the request that we certify the question to the Supreme Court, we are unable to see how we can consistently certify a question that we have already decided.

Petition denied.