Charles R. CARLTON, Plaintiff–Appellant,

v.

MYSTIC TRANSPORTATION, INC., Mystic Bulk Carriers, Inc., and Leonard Baldari, Defendants–Appellees.

Docket No. 98–7973

United States Court of Appeals, Second Circuit.

Argued: May 20, 1999

Decided: Jan. 28, 2000

**132**

Ethan A. Brecher, New York, New York (Christine A. Palmieri, Liddle & Robinson, L.L.P., New York, New York, of counsel), for Plaintiff–Appellant.

Ronald B. Goodman, New York, New York (Christy L. Reuter, Robinson Brog Leinwand Greene Genovese & Gluck P.C., New York, New York, of counsel), for Defendants–Appellees.

Before: CARDAMONE, JACOBS, Circuit Judges, and McMAHON*, District Judge.

CARDAMONE, Circuit Judge:

Plaintiff Charles R. Carlton, formerly employed as director of marketing by defendants Mystic Transportation, Inc., Mystic Bulk Carriers, Inc. and Leonard Baldari, appeals from a grant of summary judgment in favor of defendants entered July 10, 1998 in the United States District Court for the Eastern District of New York (Trager, J.). Carlton asserts he was fired on account of his age, but defendants declare plaintiff's discharge occurred as

part of a company-wide reduction-in-force and because of his mediocre job performance.

One of the arguments the employer raises in this employment discrimination case is the "same actor inference." The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against the employee. Such an inference is strong where the time elapsed between the events of hiring and firing is brief. Here it is not. And, the enthusiasm with which the actor hired the employee years before may have waned with the passage of time because the relationship between an employer and an employee, characterized by reciprocal obligations and duties, is, like them, subject to time's "wrackful siege of battering days." William Shakespeare, Sonnet LXV, *in The Complete Works of William Shakespeare*, (W.J. Craig ed., Oxford Univ. Press 1928).

In reviewing a grant of summary judgment for an employer, we examine the record to see if any genuine issues of material fact exist regarding whether the non-discriminatory reasons the employer advanced for the employee's discharge were instead a pretext for intentional age discrimination. Because we find several unresolved issues of material fact in this record, we reverse and remand.

## BACKGROUND

Mystic Transportation, Inc. is a trucking company that delivers heating oil within the New York metropolitan area, and Mystic Bulk Carriers, Inc. transports gasoline, asphalt, cement, and jet fuel in the same market. The two companies have consolidated financial statements and are inextricably intertwined. Leonard Baldari is Mystic's president and sole shareholder.

---

* Hon. Colleen McMahon, United States District Court Judge for the Southern District of New York, sitting by designation.

The defendants will be collectively referred to as Mystic.

In August 1988, at age 49, plaintiff Carlton was hired as a salesman by Baldari, who shortly thereafter appointed him as director of marketing. The principal duties of that position included soliciting new accounts with the aim of increasing his employer's delivery income. Mystic's delivery income increased each year that Carlton was employed, and nearly doubled overall from $12,485,480 in 1989 to $23,622,567 in 1994. Carlton also brought in 65 new accounts.

Due to a mild winter in 1995, Mystic's profits dropped $1,400,000 in that year's first quarter from those the company had enjoyed in the first quarter of 1994. In April 1995 Carlton, then 56 years old, was terminated. He alleges that during a meeting regarding his discharge, Baldari suggested he should "retire." Ten other employees were also discharged in early 1995.

One year prior to plaintiff's dismissal, Mystic hired Lydia Gounalis (age 38) to assist with marketing. Immediately after plaintiff was fired, Gounalis assumed his position as director of marketing. Three months later, Mystic hired a former employee, John Oravets (age 31), to work in marketing. Oravets' previous employment with defendant had been terminated in 1993 for insubordination. After he was rehired, Oravets took over the director of marketing position in June 1996.

Carlton filed an age discrimination complaint with the EEOC on September 25, 1995. Mystic stated in response that it had a deficit of $1.5 million in the first quarter of 1995—it turned out Mystic actually had an operating profit of $584,108 during that quarter, but it was about $1.4 million less than the previous year's profits for the same period. Mystic also stated that Carlton's performance was not a factor in its decision to discharge him. After its investigation, the EEOC issued a determination in defendants' favor.

On August 19, 1996 Carlton commenced the instant action in the Eastern District alleging a violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (1994); the New York State Human Rights Law, N.Y. Exec. Law § 296(1)(a) (McKinney Supp. 1999); and the Administrative Code of the City of New York § 8–101. In contrast to the EEOC proceeding, Mystic averred in the district court that it discharged Carlton not only as part of a reduction-in-force due to the economic downturn it experienced, but also because of his poor performance. The district court granted Mystic's motion for summary judgment finding that plaintiff had failed to establish a *prima facie* case of age discrimination. It further stated that even assuming arguendo that plaintiff had made out a *prima facie* case, he did not adequately demonstrate that his employer's purported reasons for discharging him were a pretext for age discrimination.

This appeal followed.

## DISCUSSION

### I Legal Principles

#### A. *Summary Judgment*

We review a district court's grant of summary judgment *de novo, see D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998), applying the same standard as the district court. This standard states that summary judgment may not be granted unless there are no genuine issues of material fact present, so that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The burden of showing that no genuine factual dispute exists rests upon the moving party, *see Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994), and in assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party. *See D'Amico*, 132 F.3d at 149; *Gallo*, 22 F.3d at 1224.

■ Because this is a discrimination case where intent and state of mind are in dispute, summary judgment is ordinarily inappropriate. *See Gallo*, 22 F.3d at 1224; *Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Thus, a trial court should exercise caution when granting summary judgment to an employer where, as here, its intent is a genuine factual issue.

## B. *The ADEA and the Burden of Proof*

■ The ADEA provides that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection extends to employees who are at least 40 years old. *See id.* § 631(a). Plainly, the purpose of the ADEA is to prohibit discrimination in employment on account of age. As Judge Learned Hand explained, "statutes should be construed ... with some imagination of the purposes which lie behind them." *Lehigh Valley Coal Co. v. Yensavage*, 218 F. 547, 552 (2d Cir.1914). Hence, it is important for a court when reviewing this kind of case to bear in mind the findings Congress made at the time of the ADEA's enactment. Among those findings was that older workers are disadvantaged in retaining employment and regaining it after being discharged, and that unemployment among older workers, relative to younger ones, was high. *See id.* § 621(a).

■ In an employment discrimination case, the plaintiff has the initial burden of "proving by the preponderance of the evidence a prima facie case of discrimination."

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (noting plaintiff's burden); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (same). In order to establish a *prima facie* case of age discrimination, the plaintiff must show that he was (1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination. *See Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.1998); *Gallo*, 22 F.3d at 1224. The burden of establishing a *prima facie* case is not a heavy one. One might characterize it as minimal. *See St. Mary's Honor Ctr.*, 509 U.S. at 506, 113 S.Ct. 2742; *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997) (per curiam); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (describing the burden of production as *de minimis* ).

■ If the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises. *See Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir.1997); *Gallo*, 22 F.3d at 1224. The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the employee. *See Norton*, 145 F.3d at 118; *Stratton*, 132 F.3d at 879; *Gallo*, 22 F.3d at 1224. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar College*, 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

■ If the employer articulates a non-discriminatory reason for its employment decision, the presumption of discrimination raised by the *prima facie* case

"simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510–11, 113 S.Ct. 2742; *see Stratton,* 132 F.3d at 879; *Fisher,* 114 F.3d at 1336. At this stage, the burden shifts back to the plaintiff to offer proof "through presentation of his own case and through cross-examination" that would allow a rational factfinder to conclude that the proffered reason was not the true reason for the adverse employment action, and that age was. *St. Mary's Honor Ctr.*, 509 U.S. at 507–08, 113 S.Ct. 2742; *see Stratton,* 132 F.3d at 879; *Fisher,* 114 F.3d at 1336. To meet this burden, the plaintiff may rely "on the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Fisher,* 114 F.3d at 1333. Plaintiff need not prove that age was the only or even the principal factor in the adverse employment action, but only that age was at least one of the motivating factors in that decision. *See Renz v. Grey Adver., Inc.,* 135 F.3d 217, 222 (2d Cir. 1997).

■ Direct evidence of discrimination is not necessary, *see Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997), because proof is seldom available with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988). Ordinarily, plaintiff's evidence establishing a *prima facie* case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995); *Chambers,* 43 F.3d at 38. Summary judgment is appropriate at this point only if the employer's nondis-

criminatory reason is dispositive and forecloses any issue of material fact. *See Cronin,* 46 F.3d at 203.

## II Analysis

### A. *Plaintiff's* Prima Facie *Case*

■ Carlton has established the first three elements of his *prima facie* case. At age 57 when he was terminated, he was a member of the protected class and qualified for his position. The only remaining question is whether plaintiff showed that his discharge occurred under circumstances giving rise to an inference of age discrimination.

■ The proof on that issue reveals that upon Carlton's termination his duties were transferred in part to Gounalis, a co-worker, who was 18 years younger than Carlton, and his remaining duties were given to Oravets, an employee 25 years younger, who was hired three months after Carlton was discharged. Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Indeed, we have previously held that a plaintiff has demonstrated an inference of age discrimination and thus established a *prima facie* case in nearly identical circumstances where the majority of plaintiff's responsibilities were transferred to a younger co-worker, and shortly thereafter some of plaintiff's other duties were transferred to a newly hired younger employee. *See Montana,* 869 F.2d at 105 (inference established where plaintiff's duties assumed by co-worker and newly hired employee who were both approximately 30 years younger); *see also Stratton,* 132 F.3d at 879–80 (fact that plaintiff's duties were taken over by individuals 13 and 26 years younger supports inference of discrimination); *Viola v. Philips Medical Sys. of N. Am.,* 42 F.3d 712, 716–17 (2d Cir.1994) (sufficient inference of discrimination for *prima facie* case where plaintiff's position filled by

newly hired younger employee within one year of his termination).

■■■■ Carlton also alleges that Baldari suggested, during the meeting regarding his termination, that he should "retire," and that this constitutes additional evidence of age discrimination. Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may "bear a more ominous significance" when considered within the totality of all the evidence. *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir.1998). Hence, it furnishes support for Carlton's *prima facie* case.

In light of the foregoing, we think plaintiff demonstrated circumstances giving rise to an inference of discrimination, and conclude that Carlton established a *prima facie* case.

### B. *Mystic's Defense*

■■■■ After a plaintiff demonstrates a *prima facie* case of age discrimination, the defendant must produce evidence "which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. 2742 (emphasis in original). This explanation "must be 'clear and specific.' " *Gallo,* 22 F.3d at 1226 (quoting *Meiri,* 759 F.2d at 997). Mystic has established that it experienced a significant decline in delivery income and profits due to weather conditions, and that a reduction-in-force was necessary to redress the imbalance in its finances. Mystic also avers that it was dissatisfied with Carlton's job performance. These explanations are sufficient to rebut the presumption of age discrimination established by plaintiff's *prima facie* case. *See, e.g., Woroski v. Nashua Corp.,* 31 F.3d 105, 109 (2d Cir.1994) (company-wide reduction-in-force is valid non-discriminatory reason for discharge); *Gallo,* 22 F.3d at 1226 (same); *Meiri,* 759 F.2d at 997 (employer's unrebutted claim of

poor job performance is valid non-discriminatory reason for discharge).

### C. *Pretext for Age Discrimination*

■■■■ Even within the context of a legitimate reduction-in-force, however, an employer may not discharge an employee "because" of his age. *See Gallo,* 22 F.3d at 1226. But Carlton must demonstrate, at least in his individual case, that the reduction-in-force and the allegation of poor performance are actually a pretext and that the real reason for his discharge was his age. *See id.*

Several questions arise regarding Mystic's assertion that Carlton was fired as part of a necessary reduction-in-force. In spite of the company's purported need to downsize, Oravets, who was 25 years younger than the plaintiff, was hired to fill Carlton's position as director of marketing only three months after plaintiff was discharged, tending to refute the reduction-in-force reason for plaintiff's discharge. *See Oxman v. WLS–TV,* 846 F.2d 448, 453 (7th Cir.1988) ("Unlike the typical discharge case, an employer who terminates employees pursuant to a [reduction-in-force] rarely replaces the employees it let go."). Although Mystic asserts that a newly acquired account warranted the hiring of another employee, its contention does not explain why Mystic did not consider rehiring Carlton for the position. The inadequacy of Mystic's explanation is of some significance since Congress, as earlier noted, found older workers especially disadvantaged in regaining employment after being displaced. *See* 29 U.S.C. § 621(a)(1). Further, Mystic provided another employee with a recall option pending a financial turnaround, but did not extend this option to Carlton. And, defendant achieved relatively insignificant savings as a result of Carlton's termination. While Carlton had received $57,200 per year, Oravets was paid $46,800 per year. All of which suggests that perhaps some other motive—beyond the company's finances—motivated Carlton's dismissal.

Defendants' assertion that Carlton was terminated in part because of poor performance also appears questionable. In its response to the EEOC, Mystic cited its decline in profits as the only reason for Carlton's dismissal, and expressly stated that job performance was not a factor. In fact, Mystic noted in its November 3, 1995 letter to the EEOC that Carlton "was let go for economic reasons. The issue of performance wasn't addressed nor was age the reason for the separation." Yet, in interrogatory responses and depositions taken for the district court litigation, Mystic declared that Carlton was fired for poor job performance. The inconsistency between the justifications offered for Carlton's dismissal in the two proceedings raises a genuine issue of material fact with regard to the veracity of this non-discriminatory reason. *See EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994) (reasonable jury could infer pretext from discrepancies in employer testimony regarding reasons for termination).

Moreover, during his employment with Mystic, Carlton never received a negative written performance evaluation or formal warning, nor is there any writing whatsoever criticizing his job performance, indicating that as a reason for his firing poor job performance was an afterthought. Although Baldari insists that he was unhappy with Carlton's performance for years, Mystic continued to employ him. Objective evidence indicates that plaintiff was performing his job adequately. He had primary responsibility for increasing delivery income and soliciting new accounts, and with his assistance Mystic's delivery income nearly doubled between 1989 and 1994. He also brought 65 new accounts to his employer.

Defendant responds to plaintiff's arguments by maintaining that it never completes written performance evaluations of its employees, and thus the lack of written evidence is unremarkable. We think there is evidence of inconsistency in defendant's handling of supposedly underperforming employees. For example, when Oravets was terminated from his first term of employment with Mystic in 1993, the employer filled out a pre-printed form that stated that Oravets' termination was for "insubordination." No such form exists for Carlton. Again, when Oravets was performing poorly during his prior term of employment, his salary was reduced. If Carlton's performance had declined, as defendant insists, it seems surprising that there was no contemporaneous proof of that fact. *Cf. Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir.1998) (inconsistent application of company disciplinary policy sufficient for jury to find that employer's defense was pretext for discrimination).

In light of the dispute in the proof on these issues, a rational jury could reject both of Mystic's non-discriminatory reasons. The conflict between plaintiff's evidence establishing a *prima facie* case and Mystic's proof in support of its non-discriminatory reasons creates genuine issues of material fact that can only be decided by a factfinder after trial. *See Cronin*, 46 F.3d at 203; *Chambers*, 43 F.3d at 38.

### D. *Same Actor Inference*

Mystic nonetheless contends that summary judgment properly issued because Carlton's evidence of discrimination is undermined by the "same actor inference." When the same actor hires a person already within the protected class, and then later fires that same person, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997). Because Baldari both hired Carlton at 49 and later fired him at age 56, the "same actor inference" applies. Case law teaches that where the termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision. *See, e.g., id.* at 561 (eight days between hiring and firing provides strong inference); *LeBlanc v. Great Am.*

**138**

*Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993) (under two years, still a significant inference); *Lowe v. J.B. Hunt Transp., Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992) (less than two years, inference still applies); *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) (six months provides for strong inference).

 However, the inference is less compelling when a significant period of time elapses between the hiring and firing. *See Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) ("the length of time between the hiring and firing of an employee affects the strength of the inference.... Over the years, an individual may develop an animus towards a class of people that did not exist when the hiring decision was made."). The seven years between Carlton's hiring and firing significantly weakens the same actor inference. Consequently, that inference alone cannot support summary judgment in this case where circumstances could have changed over the course of time. Although Mystic points out that it employs numerous individuals within the protected age group, such evidence is not dispositive. *See Chambers,* 43 F.3d at 38.

## CONCLUSION

In sum, we find that Carlton has established a *prima facie* case of age discrimination and that genuine issues of material fact exist regarding the non-discriminatory reasons Mystic has advanced for its decision to discharge him. As a result, summary judgment was wrongly granted. Accordingly, that judgment is reversed and the case remanded to the district court with instructions to reinstate plaintiff's complaint and to conduct further proceedings on the merits of Carlton's ADEA claim consistent with this opinion.