OMNIPOINT COMMUNICATIONS, INC., Plaintiff,

v.

PLANNING AND ZONING COMMISSION OF THE TOWN OF GUILFORD, Defendant.

No. Civ.A. 3–00–CV–2123 (JCH).

United States District Court, D. Connecticut.

Aug. 2, 2001.

Thomas A. Rouse, Peter S. Olsón, Pullman & Comley, Bridgeport, CT, for Plaintiff.

Thomas C. Pellegrino, William H. Clendenen, Jr., New Haven, CT, for Defendant.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT [DKT. NOS. 19, 25]

HALL, District Judge.

### I. INTRODUCTION

This is an action for money damages and injunctive relief brought pursuant to the Telecommunications Act of 1996 ("TCA") and 42 U.S.C. § 1983. The plaintiff, Omnipoint Communications, Inc. ("Omnipoint"), alleges that the defendant, the Planning and Zoning Commission of the Town of Guilford (the "Commission"), violated the TCA, the due process clause of the Fourteenth Amendment, and 42 U.S.C. § 1983 by denying Omnipoint's application for a special permit to construct a personal wireless services facility. Omnipoint has filed a motion for summary judgment on the First and Fifth Counts of the Complaint. The Commission has filed a cross-motion for summary judgment on the First Count of the Complaint. Because the court finds that the Commission's decision was supported by substantial evidence on the written record, the court denies Omnipoint's motion for partial summary judgment and grants the Commission's motion for partial summary judgment.

### II. FACTS

Omnipoint is a Delaware corporation with principal places of business in New Jersey and Connecticut. The Commission is an agency of the Town of Guilford and constitutes a "local government" or "instrumentality thereof" under the TCA and the Rules, Regulations, and Orders of the Federal Communications Commission ("FCC") promulgated pursuant thereto.

Walden Three Condominium Association, Inc. ("Walden Three") is a planned residential development ("PRD") approved by the Commission in 1973. Walden Three is the owner of a piece of real property located on Granite Road, Guilford, Connecticut. The Walden Three PRD property consists of 41.11 acres.

On June 29, 2000, Omnipoint made application to the Commission for a special permit to construct a personal wireless services facility on the Walden Three property. The facility was to consist of a 125

foot exchange monopole, accessory building, and access road. The application included a site plan, as required by § 273–99(A)(1)(b) of the Zoning Regulations of the Town of Guilford. The Commission received the application and conducted the first public hearing on the application on August 2, 2000.

During the hearing, the question of whether the portion of the property at issue had been designated "open space" was raised by Walden Three residents. Transcript, August 2, 2000, Return of Record [hereinafter "ROR"] (Dkt. No. 14) No. 2 at 62. George Kral ("Kral"), the Guilford City Planner, indicated he did not know whether the Walden Three PRD had identified portions of the property as open space. *Id.* However, he believed that, if the area had been designated as open space, the proposed structure would not be permitted. *Id.*

Later in the meeting, one of the commissioners raised the issue again and stated that he believed that, if there was an intent to establish open space, the site could not be used for a communications tower. *Id.* at 100–02. Kral indicated that he did not know whether the land was designated open space and stated: "I think that's a good question. This is a PRD that was approved about thirty years ago so I'm not familiar with the background on it. But it's something we definitely need to research. I don't know if this even was open space in the PRD." Transcript, August 2, 2000, ROR No. 2 at 102. Omnipoint's representatives similarly indicated they had not researched the issue. *Id.* at 103.

At the end of the meeting, one commissioner stated again the need to research the open space issue. The hearing was adjourned without a vote on the permit and a second hearing was to be set after additional visibility tests and research on the open space issue were complete.

On August 11 and 12, 2000, Omnipoint conducted additional balloon tests to measure the visible impact of the tower. On September 6, 2000, a second public hearing was held. At the September 6, 2000 public hearing, Omnipoint was represented by legal counsel, Brendan Sharkey ("Sharkey"). Sharkey raised the issue of the PRD early in the meeting, stating that the communications tower was a permitted use of the land under the regulations as an "accessory use" to the principal residential use of the PRD. Transcript, September 6, 2000, ROR No. 1 at 19. Sharkey indicated that the issue would be different if the land was completely undeveloped but, since the property had been developed for residential use, the communications structure was a permitted accessory use. *Id.*

Later in the hearing, a Walden Three resident asked about the open space issue. *Id.* at 71. Kral indicated he had researched the issue. He stated:

> [B]y definition in a PRD . . . any land which is not used as facilities for the PRD is considered to be open space . . . and therefore undeveloped land as part of the PR[D]. . . . [I]n this particular case this particular site was actually used as in one point in time as a part of the PRD facility. There was a catv antenna actually located on that site for the . . . condominium association I believe or some type of television antenna. . . . [S]o whether or not that meant that this particular property was not open space . . . is . . . a question that I don't know the answer . . . to. . . . [T]here's no indication in the zoning regulations that open space that's part of the PRD can't be used for some community facility or an accessory structure . . . to the principal use which [in] this case is a residential building. So in my opinion there's no clear rule that says that open space in a PRD can't be used

for ... communications towers. The particular part of this property is probably open space ..., but ... I would have to defer to legal counsel for any more definitive answer to the question than that. *Id.* at 71–72. When asked, Kral stated that the act of constructing the Omnipoint structure would not be considered maintaining the natural state of the land. *Id.* at 74. Throughout the hearing, various Walden Three residents indicated their desire to preserve the open space designated at Walden Three. *Id.* at 99, 103, 111; Letter from Walden Three Residents, ROR No. 14.

During the hearing, Diana Insolio ("Insolio"), an attorney representing residents in opposition of the permit application, submitted two documents to the Commission. The first document is a two-page excerpt from the Walden special permit application, detailing the open space plan for the PRD. ROR No. 18. Insolio described the document as "an excerpt from or ... a portion of the application that Walden Three ... filed in the 1970's that was approved by ... the Commission...." Transcript, September 6, 2000, ROR No. 1 at 102. The portion of the Walden Three PRD application submitted to the Commission states:

*Conservation of Open Spaces*

Through PRD, total site development can be clustered on a small portion of the site, permitting almost all of the 41.11 acre parcel to be conserved in its present natural and beautiful state for open space use. As is indicated by the site plan, the buildings, roads, and parking areas are to be located on 2.4 acres (5.9%) on the site. The remaining 38.7 acres—or 94.1 percent of the site—will remain as open spaces.... The developer either will retain the undisturbed open space areas and maintain and manage them as part of the continuing, long term management of the development, or will transfer portions of these areas to a land conservation organization.

ROR No. 18. The application further specifies the approximate area and proposed use for the open space. Specifically, the application designates that open space on Walden Three will be used as follows: 32.2 acres to be "Natural State," 1.9 acres to be "Bodies of Water," 3.8 acres to be "Common, Landscaped," and 0.7 acres to be "Garden Plots." *Id.* The total amount of open space was thus 38.7 acres, or 94.1% of the total PRD tract.

The second document Insolio submitted is a memorandum from the Town Planner at the time to the Guilford Planning and Zoning Commission recommending special permit approval of the Walden application. ROR No. 19. The memorandum states in part:

Related to Conservation and natural environment, this PRD has by its design approach minimized the amount of land to be developed or disturbed, eliminated Town Roads and provided Private "driveways", and has retained a maximum of natural environment and growth retained "as is". Some 86% of the 41 + acre site will remain as woods, fields, ponds and inland wetlands and will be served by walking paths.

*Id.*

Toward the end of the hearing, Omnipoint's counsel, Sharkey, again addressed the open space issue. He stated:

[T]he documents that were provided to me ... indicate that when it was originally approved there would be some eighty-six acres preserved for open space on the complex. Now the size of our compound is I believe ... fifty by fifty.... This particular location as has already been mentioned in this public hearing, has already been used by the

condo association for their own ... cable access or cable tower. So ... this is something that the condominium association has been using and certainly, and more importantly, the compound, and the amount of disturbance that is being used for this particular site, is not in any way limiting the eighty-six or eighty-four acres that was originally part of the application that's to be set aside.... I appreciate the idea that we should be keeping things for open space, but ... this is not inconsistent with what was originally proposed for this particular condominium.

Transcript, September 6, 2000, ROR No. 1 at 113–14.

At the end of the September 6, 2000 hearing, the public hearing on Omnipoint's application was closed, absent objection. On October 2, 2000, the Commission held a special meeting on the Application. During the special meeting, the Commission went into executive session with its counsel to discuss the Application.

On October 4, 2000, the Commission voted to deny the Application. On October 6, 2000, the Commission issued a written denial of Omnipoint's Application, which stated:

This application is denied based on the following findings of fact: The proposed location of the tower is on Open Space in the Walden Three PRD. The Walden Three PRD special permit application, submitted to the Commission in 1973, expressly provides that this open space will be preserved in its natural state, undisturbed with no building permitted thereon. Said open space was approved by the Commission on June 18, 1973, as land which would be conserved and retained in its natural condition, undisturbed, with no building permitted thereon, in accordance with § 273–84E of the Guilford Zoning Code.

Because of the foregoing, the Commission does not address the other significant regulatory issues presented by the application.

Letter, October 6, 2000, ROR No. 26 at 1. Pursuant to Connecticut General Statutes § 8–6, the denial of the Application by the Commission constituted a final action on the Application. On October 11, 2000, notice of the denial was published in *The Shore Line Times.*

Omnipoint timely commenced this action on November 2, 2000.

## III. DISCUSSION

### A. Standard

Summary judgment is only appropriate when there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 639 (2d Cir.2000) (citing *Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 132 (2d Cir.1999)). The burden of showing that no genuine factual dispute exists rests upon the moving party. *See Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party establishes that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134. Therefore, when reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

### B. The Administrative Record

■ As an initial matter, the Commission argues that Document Number 21 of the ROR was used by the Commission in making its decision and should be considered by the court as part of the administrative record. Document 21 is the entire May 15, 1973 Walden Three PRD application.

On March 1, 2001, the court ordered that Document 21 would not be considered as part of the record because "[n]othing presented by the Commission ... suggests that the entire Walden III Application ... was considered by the Commission or presented by the plaintiff's attorneys before the Commission" and "nothing presented by the Commission suggests that the Commission itself considered these documents or had these documents submitted to them as part of the Commission's decisionmaking process." Dkt. No. 17. The Commission attempts to correct the deficiency identified by the court by submitting an affidavit of the Chairperson of the Commission, F. John Kingsbury ("Kingsbury"), in which Kingsbury states that the Commission considered the contents of the entire Walden Three PRD application when considering the merits of Omnipoint's application. Mem in Opp. to Mot. for Summ.J. and in Support of Cross–Mot. For Summ.J. (Dkt. No. 28), Ex. B.

Omnipoint argues that Document 21 cannot be part of the record because, even if reviewed by the Commission, it was never made part of the record at any public hearing. Therefore, if the Commission reviewed it, it reviewed evidence that was outside of the record. Further, Omnipoint argues there is still no evidence in the record that the document was actually presented to or considered by the Commission.

■ "Judicial review of agency action is generally limited to review of the full administrative record that was before the agency at the time it rendered its decision." *State of N.Y. v. Shalala*, 1996 WL 87240, at *6 (S.D.N.Y. Feb.29, 1996) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Document 21 was never entered into the record during any of the public hearings. At the first public hearing, the issue of open space was raised for the first time. Kral, the Guilford Town Planner, indicated that more research into the issue was necessary. At the second public hearing, Kral indicated he had looked into the issue. However, he did not specifically state that he had reviewed the entire Walden Three application, nor did he submit the application to the Commission during that hearing. Kingsbury states in his affidavit that "[a]n excerpt from the application was submitted at the September 6, 2000 public hearing." Mem. in Opp. to Mot. for Summ.J. and in Support of Cross–Mot. For Summ.J. (Dkt. No. 28) at Ex. B. That excerpt is a part of the ROR. *See* ROR No. 18. Kingsbury does not state that the entire application was submitted. Therefore, nothing submitted by the Commission indicates that the entire application was made a part of the record during the public hearings.

■ Under certain circumstances, "the [c]ourt may also consider evidence that was considered by the agency but omitted from the formal administrative record." *Shalala,* 1996 WL 87240, at *6 (citing *Thompson v. United States Dep't of Labor,* 885 F.2d 551, 555–56 (9th Cir.1989) (considering correspondence which was necessarily considered by administrative law judge because it was sent directly to him and was necessarily considered by the Secretary of Labor because it was included in a motion made to the Secretary)). However, nothing presented by the Commission demonstrates that the Commission necessarily considered or had to consider the entire Walden Three application.

In this case, the Commission did not necessarily have the entire Walden Three application before it. The Commission had testimony from Kral and other members of the community about the application. However, nothing in the record or in the Commission's decision indicates that it had the entire application before it. Further, although Kingsbury's affidavit states that the Commission considered the entire application, it does not indicate when or how the entire application was presented to the Commission and thus became part of the record before it. Therefore, as the court previously held, Document 21 will not be considered on the motions for summary judgment.

### C. Federal Telecommunications Act

Congress enacted the TCA " 'to provide a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition....' " *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 492–93 (2d Cir.1999) (quoting H.R.Conf.Rep. No.

104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124). In furtherance of this goal, Congress enacted 47 U.S.C. § 332(c)(7), which limits state and local government's authority to deny construction of wireless telecommunications towers, and regulates how such decisions must be made. 47 U.S.C. § 332(c)(7)(B). Although the TCA preserves local zoning authority in all other respects over the siting of wireless facilities, " 'the method by which siting decisions are made is now subject to judicial oversight. Therefore, denials subject to the TCA are reviewed ... more closely than are other types of zoning decisions to which federal courts generally accord great deference.' " *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 637–38 (2d Cir.1999) (quoting *Town of Oyster Bay,* 166 F.3d at 493).

The TCA provides that any denial of a request to place, construct, or modify personal wireless service facilities must be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). Section 332 further provides for judicial review of any local decision denying a request to place, construct or modify, wireless service facilities. *Id.* at § 332(c)(7)(B)(v).

■ "Whether a decision is supported by substantial evidence must be determined according to 'the traditional standard used for judicial review of agency actions.' " *Willoth* 176 F.3d at 638 (quoting *Town of Oyster Bay,* 166 F.3d at 494 (internal quotation omitted)). Under this standard, the district court may neither "engage in [its] own fact-finding nor supplant the [local board's] reasonable determinations." *Town of Oyster Bay,* 166 F.3d at 494. A district court defers to a zoning board's decision and cannot substitute its judgment for that of the board. *Sprint Spectrum L.P. v. Town of North Stonington,* 12 F.Supp.2d 247, 252 (D.Conn.1998)

(citing *Farrington v. Zoning Bd. of Appeals of Noank Fire Dist.*, 177 Conn. 186, 190, 413 A.2d 817 (1979)). However, a reviewing court must overturn the board's decision under the substantial evidence requirement if it "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Id.* (citing *BellSouth Mobility, Inc. v. Gwinnett County*, 944 F.Supp. 923, 928 (N.D.Ga.1996)).

■ "Substantial evidence requires evaluation of the entire record, including opposing evidence, and requires a decision to be supported by 'less than a preponderance but more than a scintilla of evidence. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Willoth*, 176 F.3d at 638 (quoting *Town of Oyster Bay*, 166 F.3d at 494 (internal quotations omitted)). The record "should be reviewed in its entirety, including evidence opposed" to the zoning decision. *Town of Oyster Bay*, 166 F.3d at 494. "[L]ocal and state zoning laws govern the weight to be given the evidence," and "the TCA does not 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.'" *Id.* (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F.Supp.2d 359, 366 (D.N.J.1998)).

### D. Cross–Motions for Summary Judgment

Omnipoint seeks summary judgment on Counts One and Five of the Complaint.

Count One alleges a TCA violation under 47 U.S.C. § 332(c)(7)(B)(iii), which requires that any decision by a local government to deny a request to place, construct, or modify personal wireless service be in writing and supported by substantial evidence. Count Five alleges that the Commission violated 42 U.S.C. § 1983 because the denial of its application violated the TCA. Omnipoint argues that, as a matter of law, the record does not contain substantial evidence to support the Commission's denial of Omnipoint's application and, therefore, summary judgment should be granted in its favor on Counts One and Five.[1] The Commission argues that, as a matter of law, the Commission had substantial evidence on the record to support the denial of Omnipoint's application and, therefore, summary judgment should be granted in its favor on Count One.

### 1. Reason for Denial

■ Omnipoint argues that the Commission provided only one reason for its denial of the application—the designation of open space. The Commission stated this reason in the first paragraph of its decision. The second paragraph of the Commission's decision states:

Because of the foregoing, the Commission does not address the other significant regulatory zoning issues presented by the application.

Letter, October 6, 2000, ROR No. 26 at 1. Omnipoint argues that this paragraph does not comply with the TCA procedural re-

---

1. The Commission argues that the court should not consider the motion for summary judgment with regard to Count Five, the § 1983 claim. According to the Commission, the court issued an order on January 5, 2001 giving Omnipoint permission to move for summary judgment only on Count One. However, the order merely set a deadline for dispositive motions to be filed as to Count One that was earlier than the deadline for dispositive motions as to the other Counts. Report of Parties Planning Meeting (Dkt. No. 10). Nothing in the order prohibited Omnipoint from filing a motion for summary judgment as to Count Five at the same time it filed its motion as to Count One. Therefore, the court will consider the summary judgment motion as to both Counts.

quirements because it suggests there were other grounds on which the application was denied. Further, Omnipoint argues that, despite the second paragraph, the Commission has not reserved the right to re-examine Omnipoint's application should the Commission lose on this action. The Commission does not dispute that the only reason for the denial of the application was the open space issue and further agrees that it has not reserved a right to re-examine Omnipoint's application.

The court finds that the Commission's decision complies with the TCA procedural requirements—it was issued in writing, and the reasons for the Commission's decision were explained and linked to evidence in the record. 47 U.S.C. § 332(c)(7)(B)(iii). "A local zoning authority must issue a decision in writing setting forth the reasons for the decision and linking its conclusions to evidence in the record." *Omnipoint Communications, Inc. v. Planning & Zoning Comm'n of the Town of Wallingford*, 83 F.Supp.2d 306, 309 (D.Conn. 2000). Otherwise, the court would have to "wade through the record below in an attempt to discern the Commission's rationale." *Id.* Therefore, the only ground on which the application was denied was the designation of open space because it is the only ground cited in the Commission's decision. The issue before the court is thus whether there is substantial evidence in the record to support the denial of the application because of the open space designation.

### 2. Town of Guilford Regulations

█ As stated above, when evaluating the evidence in a substantial evidence claim, local and state zoning laws govern the weight to be given to the evidence. *Town of Oyster Bay*, 166 F.3d at 494. The Commission relied on the provisions of the Town of Guilford Regulations Section 273–84 E to support its position that the pro-

posed facility was located in "open space." Guilford Regulations Section 273–84 establishes "design standards" for PRDs. Section 273–84E states:

> *Open Space:* All land not used for the construction of dwellings, supporting facilities, parking, vehicular circulation or private yards shall be considered open space. It shall be so arranged and defined that its area, permanent use and control can be established. Except when required for Town use, it shall be dedicated for use by the residents of the PRD with adequate controls to assure its maintenance and with restrictions or covenants prohibiting or restricting building on it.

Guilford Regs. § 273–84E.

Omnipoint argues that this regulation governing open space does not specifically prohibit or restrict the use of open space land in a PRD but merely constitutes a development standard to be applied when reviewing an application for a PRD. The Commission responds that the Regulation requires a PRD developer to restrict or prohibit building on open space.

The General Provision under the Design Standard Regulations, Guilford Regulations Section 273–84A, states:

> Each planned residential development (PRD) shall have a design that conforms to and implements the criteria for a special permit set forth in § 273–83 of this article and conforms to the standards hereinafter specified. The design of the PRD is of utmost importance to protect property values, prevent future property deterioration, promote good community living standards, provide for feasible management control, preserve open space and natural features and serve the purposes of these regulations.

Guilford Regs. § 273–84A. Other provisions in Section 273–84 detail standards for

utilities, access, supporting facilities, height of buildings, and lighting and contain specific requirements for PRD designs. *See, e.g.,* Guilford Regs. §§ 273–84B, 273–84C, 273–84D, 273–84F, 273–84G, 273–84H, 273–84I. The Commission argues that it read the open space standard to require restrictions on use and development of open space in PRDs. Thus, while it looked to the Walden application to determine the specific restrictions in Walden, Section 273–84E itself requires some designation of open space. Omnipoint argues that the Commission had to look to the application to determine both whether any open space designation was made and what specific restrictions were approved.

In light of the language in the general provision of Section 273–84 that states "[e]ach [PRD] shall have a design that conforms to and implements the criteria for a special permit ... and conforms to the standards hereinafter specified" and in light of the specific requirements created by the other regulations in Section 273–84, the court finds that the open space regulation in Section 273–84E creates a requirement for PRDs to dedicate such space for use by its residents with controls on its maintenance and restrictions or prohibitions on its use. The specific controls and restrictions should thus be established in the approved Walden PRD application.

### 3. Substantial Evidence

Omnipoint makes two substantial evidence arguments. First, Omnipoint argues that the Commission's conclusion that the location of the proposed facility was in open space was not supported by substantial evidence in the record. Second, Omnipoint argues that, even if the area at issue was "open space," the Commission's conclusion that the construction of the facility was prohibited because of that was not supported by substantial evidence in the record.

### a. Designated Open Space

 Omnipoint argues that, although Document 18 was part of the initial Walden Three application, it does not establish anything about how the open space issue on the Walden Three property was finally resolved by the Commission in 1973. However, in presenting the document to the Commission, Insolio specifically stated that it was part of the application that was approved by the Commission in 1973. Transcript, September 6, 2000, ROR No. 1 at 108. Omnipoint offered no evidence to the contrary and the Commission was free to credit Insolio's testimony. Thus, the Commission had evidence before it indicating the approximate area designated as "open space."

In addition to the portion of the application and Insolio's testimony, the Commission had a letter from residents of Walden Three stating that the structure would be built on designated open space (ROR No. 14), a memorandum from the Guilford Town Planner in 1973 written at the time of the PRD application and stating that 86% of the Walden Three site would remain open space (ROR No. 19), and a map indicating the portion of land approved as the Walden Three PRD (ROR No. 38).

Finally, in his testimony at the September 6, 2000 public hearing Sharkey, counsel for Omnipoint, did not argue that the area in question was not part of the designated "open space." Transcript, September 6, 2000, ROR No. 1 at 113–14. Instead, Sharkey argued that the proposed Omnipoint would not be inconsistent with the originally proposed eighty-six acres of open space, particularly in light of the fact that such space had previously been used for an antenna. *Id.*

Based on the above, the court finds that the Commission had substantial evidence

on the record to conclude that the area in which Omnipoint sought to build was designated open space.

### b. Prohibition on Construction in Open Space

█ Omnipoint argues that, even if the land was designated as open space, the Commission did not have substantial evidence to support a finding that Omnipoint could not build on such open space. According to Omnipoint, the Regulations contemplate that development on open space could be allowed on a restricted basis and provide for the construction of accessory uses. Omnipoint points to Kral's testimony that there had been a CATV antenna previously located on the site and that there is no rule that open space cannot be used for an accessory structure to the principal use of the property. Transcript, September 6, 2000, ROR No. 1, at 71–72. Omnipoint argues that its structure should have been allowed as a restricted use of the open space comparable to the CATV antenna or as an accessory structure.

The Commission responds that there was substantial evidence on the record to support its finding that the Omnipoint development was not permissible in the area designated as open space. The Commission points to the portion of the Walden Three application in the record. The application states that "[t]he developer either will retain the undisturbed open space areas and maintain and manage them as part of the continuing, long term management of the development, or will transfer portions of these areas to a land conservation organization." ROR No. 18. Thus, according to the Commission, there is substantial evidence on the record that Walden Three open space can either be transferred to a land trust or must remain in its natural state.

The Commission further argues that the Omnipoint structure cannot be considered an extension or a supporting facility for the CATV antenna. Omnipoint's purpose in constructing the structure is to obtain increased cell coverage along Interstate 95, not, as in the case of the CATV antenna, for any specific use by the residents of Walden Three. Further, Omnipoint's structure consists of, not only a tower, but an access road and a building, which structures cannot be considered extensions of a lone-standing CATV antenna.

The court finds that there was substantial evidence on the written record to support the Commission's decision. As the court found above, the Town of Guilford regulations require PRD developers to designate open space and restrict its use. In compliance with such regulations, the portion of the application on the record, which Insolio testified was the approved application, specified the areas designated as open space and how the use of such space was to be restricted.

Omnipoint's argument that its structure was an accessory use or supporting structure is unavailing. First, accessory use generally means a building or other structure which is subordinate to and customarily incidental to the principal use of the property. *See* Guilford Regs. § 273–2. The purpose of the Omnipoint structure was to increase cellular coverage along the interstate, not for any use incidental to the PRD or beneficial to the residents of Walden Three. Therefore, it could not be an accessory use under the general regulations. Second, to the extent that Omnipoint argues that the regulations consider communications facilities to be a permitted accessory use regardless of the principal use, such argument was not made to the Commission. Further, the regulations cited by Omnipoint do not say anything about building communications structures on designated open space, on which there is

no permitted use. Finally, the existence of the CATV antenna does not change the fact that the land had been designated as open space. The CATV antenna was of use to the residents of Walden Three and, thus, distinguishable from the proposed Omnipoint structure. Further, the question before the court is whether the Commission's decision with regard to the Omnipoint structure was supported by substantial evidence, not whether previous uses of the property were permissible.

All interested parties had notice at the August 2, 2000 hearing that the Commission considered the open space issue relevant and would hear additional evidence about it. At the September 6, 2000 hearing, the Commission heard mixed testimony on the issue of open space. Kral stated that the construction of a communications tower does not preserve the natural state of the area, Insolio stated that such a structure would violate the designated open space requirements, and various Walden Three residents voiced their concern that the Omnipoint structure would violate the open space provisions of the PRD. On the other hand, Kral indicated that the land had been previously used for an antenna and Sharkey stated that the size of the structure would not limit the originally designated open space and is not inconsistent with what was originally proposed.

In reviewing the evidence before it, the Commission determined that the Walden Three PRD restricted construction of Omnipoint's structure. The court "may reverse an agency decision . . . only if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Cellular Phone Taskforce v. Federal Communications Comm'n,* 205 F.3d 82, 89 (2d Cir.2000) (quoting 5 U.S.C. § 706(2)(A)). Viewing the record in its entirety, the court finds that the Commission's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support [its] conclusion." *Willoth,* 176 F.3d at 638 (quoting *Cellular Tel. Co.,* 166 F.3d 490, 494 (2d Cir.1999)).[2] The Commission's decision was supported by substantial evidence on the written record and was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful. Because there was substantial evidence on the written record to support the Commission's conclusion that the area of land on which Omnipoint sought to build its structure was designated as open space, and the PRD restricted the building of the structure on such open space, the court grants the defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Omnipoint's Motion for Summary Judgment [Dkt. No. 19] as to Counts One and Five and GRANTS the Commission's Motion for Summary Judgment [Dkt. No. 25] as to Count One.

The parties are directed to file a planning report with recommended dates for discovery on the remaining counts in the case by August 31, 2001.

**SO ORDERED.**

2. The court notes that in addressing various motions in an identical case filed by Omnipoint in state court, the Connecticut Superior Court found: "The issue of the proposed site of the plaintiff's tower, its claimed status as open space and of restrictions placed upon the use of said space were widely addressed in the course of the hearings on the instant application. The plaintiff had notice of the claims as to the status of said site and restrictions as to its use, and the plaintiff had the opportunity to be heard on these issues." *Omnipoint Communications, Inc. v. Guilford Planning & Zoning Comm'n,* 2001 WL 477379, at * 3 (Conn.Super. Apr.24, 2001).