**Anitra KNOX, Plaintiff,**

v.

**CITY OF NEW HAVEN, Defendant.**

**No. 3:03–CV–1408.**

United States District Court,
D. Connecticut.

Feb. 15, 2005.

John R. Williams, Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff.

Audrey Claire Kramer, Office of Corporation Counsel, New Haven, CT, for Defendant.

---

*RULING AND ORDER*

CHATIGNY, District Judge.

Plaintiff, an African–American female, brings this action against the City of New Haven pursuant to 42 U.S.C. § 1983 claiming that the New Haven Board of Fire Commissioners (the Board) violated her rights under the Equal Protection Clause of the Fourteenth Amendment when it declined to appoint her to the firefighter training academy by a vote of four to one. Plaintiff alleges that the Board's decision was motivated by sex discrimination. She also alleges that she was treated differently from candidates who were similarly situated and that there was no rational basis for the difference in treatment. The City has moved for summary judgment relying on affidavits signed by the four members of the Board who voted against plaintiff's appointment to the academy. The affidavits state that the Board members voted as they did due to a lack of complete information concerning plaintiff's medical status. Plaintiff opposes the motion for summary judgment relying on her own affidavit. The City replies that the admissible evidence in the record is insufficient to support a verdict in her favor. For the reasons set forth below, I conclude that the City is not entitled to summary judgment on the sex discrimination claim but is entitled to summary judgment on the disparate treatment claim. Accordingly, the motion is granted in part and denied in part.

*Facts*

The evidence, viewed most favorably to the plaintiff, would permit a jury to reasonably find the following facts.

In August 2001, plaintiff was contacted at her home in South Carolina by Ronald Dumas, an assistant chief of the New Haven Fire Department. *See* Pl.'s Aff. ¶ 4. Dumas told her she had been selected for the next class of New Haven firefighters. *Id.* Plaintiff's father had been a firefighter in New Haven before he retired and she had long aspired to become a member of the Department. *Id.* ¶ 3. Dumas assured plaintiff that all minority females who passed the examination would be hired because minority females were underrepresented in the Department. *Id.* ¶ 4. In reliance on these representations, plaintiff and her husband quit their jobs and moved with their children to New Haven. *Id.* ¶ 5.

Before candidates for the firefighter training academy could be appointed, they had to undergo a comprehensive physical examination by Dr. Peter Amato of the Department of Occupational Health at St. Raphael's Hospital. Plaintiff was examined on February 25, 2002. In connection with the examination, she reported that she had injured her back in 1993 and again in 2000, *see* Def.'s Ex. 2c, and that she was currently having back pain due to a bulging disc sustained in a car accident. *See* Def.'s Ex.2d. Based on his examination, Dr. Amato reported that plaintiff was medically able to perform the essential functions of the job provided she wore powder-free gloves. Def.'s Ex. 2b.

At a regular meeting of the Board of Fire Commissioners on June 12, 2002, the Board voted to accept thirty candidates into the training academy. Def.'s Ex. 2e. Five of the thirty successful candidates were women but plaintiff was not among them.

On June 15, 2002, plaintiff received a letter signed by New Haven Fire Chief Dennis W. Daniels informing her that the Board was unable to offer her a position based on the results of her physical examination. Def.'s Ex. 2f. Plaintiff took the letter to the Chair of the Board, Reverend Boise Kimber. Kimber told her the letter was an error and assured her a place had been reserved for her in the class. Pl.'s Aff. ¶ 10.

Plaintiff subsequently met with Chief Daniels at Department headquarters. *Id.* ¶ 11. Daniels commented that plaintiff had been in an automobile accident in May 2001, and had not been discharged from care. *Id.* Plaintiff responded that records submitted to the Department showed that she had returned to work without medical restrictions in August 2001. *Id.* Daniels then offered to reimburse plaintiff for the cost of her training equipment. *Id.*

Plaintiff's father subsequently spoke with Reverend Kimber, who assured him that, despite whatever Chief Daniels may have said, the Board would approve plaintiff as a member of the training academy's new class at a special meeting on June 21, 2002. At or about the same time, an attorney who represented plaintiff in connection with the injuries she sustained in the car accident spoke directly with Chief Daniels and was assured by the Chief that the outcome of the Board meeting would be favorable to the plaintiff.

On June 21, 2002, shortly after 9:00 a.m., the Board convened a special meeting to reconsider plaintiff's application. *See* Def.'s Ex. 2h. The meeting was recorded on audiotape. *See* Def.'s Ex. 7. Chief Daniels reported that the plaintiff had not been appointed to the training academy at the previous meeting of the Board because certain medical information had not been received from St. Raphael's Occupational Health; that St. Raphael's had subsequently forwarded information to the City's chief administrative officer, Karen Dalton; that Dalton had discussed the information with the City's corporation counsel, Tom Ude; and that the two of them (i.e. Dalton and Ude) had recommended that plaintiff's appointment be approved by the Board in order to avoid litigation. The Board discussed various safety concerns that could arise if plaintiff were accepted into the training academy. With regard to the possibility that plaintiff might file a lawsuit if she were not accepted, several Board members expressed the opinion that they would rather face a lawsuit than appoint an individual with potential medical problems and thereby possibly put her and others at risk.

After a recess, one of the commissioners made a formal motion that plaintiff not be appointed to the training academy due to a lack of sufficient information from St. Raphael's Occupational Health. The motion was approved by a vote of four to one. The same day, Dr. Amato sent a letter to Chief Daniels confirming that, after further review of plaintiff's medical records, he was unable to make a recommendation concerning her application. Def.'s Ex. 2g.

*Standard for Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits [presented by the parties] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the party against whom summary judgment is sought would have the burden of proof at trial on a dispositive issue, as is the case here with regard to plaintiff's equal protection claims, the party moving for summary judgment must show that there is an absence of evidence to support a jury verdict in favor of the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). The burden then shifts to the nonmoving party to present by affidavit (or other evidentiary materials) affirmative evidence from which a jury could reasonably return a verdict for that party. *See Anderson*, 477 U.S. at 248–52, 257, 106 S.Ct. 2505. The nonmoving party's evidence must be accepted as true, and the nonmoving party must be given the benefit of all reasonable inferences. If the evidence in the record, viewed in this manner, would be sufficient to support a jury verdict for the nonmoving party, the motion for summary judgment must be denied. If, however, the evidence would be insufficient, summary judgment may be granted to save the parties and the public the expense of an unwarranted trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

*Discussion*

*Equal Protection Claim Alleging Sex Discrimination*

■ The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination in public employment on the basis of sex, *see Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and equal protection claims against municipalities alleging sex discrimination in employment may be brought pursuant to 42 U.S.C. § 1983. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117–18 (2d Cir.2004).

The City contends that it is entitled to summary judgment on plaintiff's sex discrimination claim because she has no evidence that a similarly situated male was treated differently, in other words, no evidence that a male candidate with a comparable medical issue was appointed to the academy. The Second Circuit has instructed district courts that evidence of disparate treatment is not required to withstand a motion for summary judgment on a discrimination claim. *See Back*, 365

F.3d at 124; *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 77–78 (2d Cir.2001); *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466–68 (2d Cir.2001). The availability of summary judgment depends instead on whether the defendant's proffered nondiscriminatory reason is " 'dispositive and forecloses any issue of material fact.' " *Back*, 365 F.3d at 124 (quoting *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 135 (2d Cir.2000)).

Applying this test, the City is not entitled to summary judgment on the sex discrimination claim. The significance of the Board's asserted lack of complete information concerning the plaintiff's medical status is genuinely disputed. Viewing the present record in a manner most favorable to the plaintiff, a jury could reasonably conclude that any lack of information about her medical status was not significant because: (1) Dr. Amato reported to the Board that she could perform the essential duties of a firefighter after she told him about the painful bulging disc she sustained in the car accident; (2) his recommendation was consistent with her medical and work history; (3) there is no evidence or explanation as to why he later wrote the letter stating that he could not make a recommendation concerning her application; (4) he wrote and transmitted the letter after the Board voted on June 21, 2002, which is unusual; (5) he wrote the letter, not on his own initiative, but at Chief Daniels' request; (6) his statement in the letter that he was unable to make a recommendation is somewhat ambiguous; (7) on the eve of the June 21 meeting, Chief Daniels assured the attorney who represented plaintiff in connection with the injuries she sustained in the car accident that she would be appointed to the training academy; and (8) Karen Dalton and Tom Ude, both responsible City officials, recommended that plaintiff be appointed by the Board to avoid litigation, although they

knew about her medical status. Accordingly, defendant's motion for summary judgment on the sex discrimination claim is denied.

*Equal Protection Claim Alleging Disparate Treatment*

 The Equal Protection Clause prohibits government officials from intentionally treating a person differently from others who are similarly situated unless there is a reasonable basis for the difference in treatment, *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), and a claim for denial of equal protection in connection with municipal employment may be brought pursuant to § 1983. *See Giordano v. City of New York*, 274 F.3d 740, 750–52 (2d Cir.2001). To establish such a claim, a plaintiff must prove that she was intentionally treated differently than others who were similarly situated, and that there was no rational basis for the difference in treatment. *See id.*

Plaintiff's disparate treatment claim fails because she has no evidence that the four members of the Board who voted against her appointment knew they were treating her differently from other candidates. In the absence of evidence of such knowledge on the part of those Board members, a jury could not reasonably infer that they intended to treat her differently from someone else. Because a jury finding of intentional discrimination could not be sustained, summary judgment on this claim is appropriate. *See id.*, at 751–52.

*Conclusion*

Accordingly, defendant's motion for summary judgment is hereby granted in part and denied in part.